## Perry v. City Of Cumberland.

January 13, 1950.

Rehearing denied March 24, 1950.

Cleon K. Calvert, Judge.

376

Astor Hogg and J. S. Greene, Jr. for appellant.

J. K. Beasley and James Sampson for appellee.

CLAY, COMMISSIONER—Affirming.

Appellant suffered a fractured ankle when she fell into an open culvert near the traveled portion of state highway 119 in the City of Cumberland. On the first trial of her suit against the City, the jury awarded $5,000 damages. This verdict was set aside by the trial Court as excessive. At the conclusion of the evidence on a new trial, a verdict was directed for the City. On this appeal appellant insists the last judgment should be reversed and the first reinstated.

The accident occurred after dark near the intersection of state highway 119 and Martin Street in Cumberland, a city of the fifth class. A small culvert about 18 inches deep had been constructed 9 feet from the paved edge of the state highway and approximately 6 or 7 feet from the gravelled portion of Martin Street. The culvert was surrounded by grass and weeds, and could not easily be observed on the night appellant stepped into it.

A verdict was directed for the City on the ground that the culvert was in the right-of-way of state highway 119; that this right-of-way had been conveyed to the Commonwealth of Kentucky for the benefit of the Department of Highways; and since the Department was responsible for the maintenance of the highway, the City was no longer under any duty to keep it in a reasonably safe condition. We think this the correct view.

KRS 177.041, subsection 1, declares that the maintenance of city streets forming an integral part of the state highway system is a proper and legitimate state function. Subsection 2 of this section provides that when such streets have been designated as a necessary part of the state primary road system by the Commissioner of Highways, "the future maintenance, repair, construction and reconstruction of such streets shall be done" by the Department. KRS 177.045 makes provision for the conveyance of such designated streets to the Commonwealth.

The evidence shows that the City of Cumberland, prior to the date of this accident, had conveyed the right-of-way, including the culvert area, to the state for the purposes contemplated by the above mentioned statutes. It is therefore apparent that the City had relinquished control of this street insofar as maintenance

and repair were concerned, to the Department of Highways.

The liability of a city for injuries caused by defects in its public streets, is predicated upon a failure to perform its duty with respect to proper maintenance and repair. The duty may be imposed either by the common law or by statute. Its basis is the fact that a municipality is ordinarily invested with *control* of the streets and highways within its corporate limits. See 25 Am. Jur., Highways, Section 348.

Running throughout the cases which we have examined, there appears this constant element of control. See City of Pineville v. Lawson, 225 Ky. 542, 9 S. W. 2d 517; City of Hazard v. Howard's Administratrix, 243 Ky. 713, 49 S. W. 2d 537; and City of Corbin v. Payne, 288 Ky. 566, 156 S. W. 2d 850.

It is of course true, as appellant argues, that a city cannot without legislative authority surrender its dominion over its streets, nor delegate to others the performance of duties in connection therewith so as to relieve itself of responsibility. See 25 Am. Jur., Highways, Section 258; and City of Pineville v. Lawson, 225 Ky. 542, 9 S. W. 2d 517, above cited.

Prior to the enactment in 1942 of the statutes above referred to, apparently the City of Cumberland had exclusive control of all its streets and public ways, and consequently had the duty of maintaining them in a reasonably safe condition. The 1942 act, however, specifically shifted that control with respect to maintenance, repair, construction and reconstruction to the Department of Highways where a street was designated as a part of the state system. Under KRS 177.043 the City was left only with authority to "sweep, sprinkle, light or police" such streets. This limited supervision obviously did not require the City to remove, repair or place safeguards around the drainage facilities of the highway. The control of the culvert, after the conveyance of the right-of-way by the City, passed to the Department of Highways.

Since a city's liability grows out of its dominion over the public place involved, it is relieved of responsibility when the Legislature invests another govern-

mental agency with such dominion. As stated in 25 Am. Jur., Highways, Section 396:

"It may be stated generally that as between particular public agencies liability rests upon the one which is charged with the duty of maintenance and repair in the particular instance."

In Martin v. J. A. Mercier Co., 255 Mich. 587, 238 N. W. 181, 78 A. L. R. 520, it was held that where under a statute, a county took over jurisdiction and control of a city street, the city was no longer responsible for defective conditions therein. See also note in 8 A. L. R. 1284. We conclude the City was under no duty to safeguard this culvert, assuming it constituted a hazard to pedestrians, and its failure to do so did not constitute negligence. The trial Court properly directed a verdict for the City.

Another question is presented by reason of the fact that the City's defense just discussed was not pleaded or proved on the first trial of this action. Therefore, if the trial Court improperly granted appellee a new trial, the original verdict in appellant's favor must be reinstated.

When a trial judge grants a new trial, his discretion will be respected. He decided the award of $5,000 in appellant's favor was excessive. The question before us is not whether we would reach the same conclusion, but whether or not in our opinion the trial Judge abused his discretion. Beall v. Louisville Home Telephone Company et al., 166 Ky. 345, 179 S. W. 251.

We have carefully examined the evidence relating to appellant's injuries. While she suffered what is known as a comminuted, or multiple, fracture of the left ankle, her doctor testified that medical treatment resulted in a "good solid union and good alignment." His only statement with respect to possible future disability was that she had "some permanent, and some partial." He stated that she would be able to perform her ordinary duties as a housekeeper "with slight limitations."

Appellant, who was 42 years of age, was in the hospital three weeks, wore a cast nine weeks, and testified she could not walk without a crutch for five months. At the time of the trial she said she still suffered some pain in her left leg. No special damages were proven, and

the award of $5,000 was apparently allowed for pain, suffering, and possible future disability.

This was a very liberal verdict for a broken bone, and we can understand how the trial Judge, hearing the witnesses, could reasonably determine that it was decidedly disproportionate to the injury. We cannot say he abused his discretion or improperly exercised it. Therefore, appellant is not entitled to have her first verdict reinstated.

For the reasons stated, the judgment is affirmed.