Bess TURNER, Appellant,

v.

Frances JOHNSON, Appellee.

Court of Appeals of Kentucky.

March 25, 1960.

Ollie James Cockrell, Jackson, Earl B. Rose, Beattyville, for appellant.

J. Douglas Graham, Campton, for appellee.

MONTGOMERY, Chief Justice.

Frances Johnson recovered a judgment for $5,128 against Bess Turner as compensation for injuries received from the overturn of a car. Bess Turner insists on appeal that: (1) The jury should have been peremptorily instructed to find for her; and (2) the verdict is excessive.

Appellant purchased a new car from the Dodge and Plymouth agency in Jackson. Appellee was the wife of one of the owners of the agency. Just before the purchase of the car in April 1955, appellee's husband had given appellant three or four driving lessons. Appellant had a temporary license and permit but had not received her operator's license. She said that appellee's husband had promised that she would be taught to drive. A day or two before the accident, appellee had accompanied appellant on a drive to Kragon, Kentucky, and back. It is not clear whether this was a driving lesson or a new car demonstration.

Appellee delivered the new car to appellant at her place of employment. Appellant insists that appellee was to give her further driving instruction. Appellee denied that she was or had been teaching appellant to drive. Mrs. Turner took the wheel to go by her home and pick up her

husband and then to drive appellee to her husband's garage. Appellee testified that she had observed nothing wrong with appellant's driving prior to the accident. As they proceeded north on Main Street in Jackson, appellant stopped the car for a stop sign in front of the courthouse. She described the mishap thusly:

"When we pulled up and stopped for just a second and I pulled around and I said, 'How did I do?' and she said 'All right but you are over in the other fellow's lane of traffic too much. Pull over a little,' and the next thing I knew it hit the side wall and I don't recall her saying anything else. That's all I knew."

Appellee's version is that as appellant was making the turn, she (appellee) said, "Cut it back a little." Asked what happened then, she replied, "It all happened so fast I really don't know." The car struck the courthouse yard wall and turned over. Both women were stunned and shocked.

After all the proof was in, appellant moved for a directed verdict on the ground that appellee knew appellant to be an inexperienced driver and thereby assumed the risk of riding with her. The motion was overruled.

The evidence was in conflict as to whether appellee had assisted appellant in learning to drive and had knowledge of appellant's inexperience as a driver. Such being the case, it was proper to deny the motion for a directed verdict and to permit the jury to resolve the issue, which it did with a verdict for the appellee.

The jury awarded $5,000 as compensation for the pain and suffering sustained and to be sustained in the future as a result of the injuries received by appellee and $128 for her medical expenses. The $5,000 award is questioned as being excessive.

The history of the medical attention given and the activities of appellee is interesting. On the day of the accident in April 1955, appellee was examined by Dr. Pryce Sewell, Jr., a local physician, in his office. He found her to be in severe shock and extremely nervous. She complained of severe pain in her left hip and back. There was a large bruise on the left hip. There is no mention of any complaint concerning the neck or head at that time. Dr. Sewell X-rayed the patient's hip and low back, with negative results so far as any bone injuries were concerned. This was the only medical attention, other than a sedative, rendered by him.

According to appellee, she lost one day at that time from teaching school. During the summer following, she attended graduate school in New York City and concluded her summer's activities with a motor tour of New England, traveling about 1,500 miles. She returned to teaching school in the fall. She continued to do her housework. Meanwhile between the accident and time of trial, she had a baby. She said that she missed performing her regular duties for a total of six weeks or two months during this period, which she attributed to her injuries. The dates are not shown.

On the trial, appellee complained of being extremely nervous and of suffering from pains and aches in her neck and head when tired and on cold or rainy days. She said that the headaches were frequent and lasted for as long as a month at a time. Except for a visit to an optometrist, who found her eyes "were not bad," she received no medical treatment from the time of her first and only visit to Dr. Sewell in April 1955 until Dr. William K. Massie examined her at the Good Samaritan Hospital about May 26, 1956. He examined her the following August and again on February 5, 1957, before his deposition was taken on March 5, 1957. There is no evidence to show that appellee sought or received any medical attention during the intervening period, exceeding thirteen months, between Dr. Massie's last examination and the date of trial, March 27, 1958.

Dr. Massie's testimony, in large part, consisted of repeating appellee's statement of the case history of her claimed injuries and subjective symptoms. He was unable to find any objective indications of injury attributable to the accident. He did find that appellee had low back pains, possibly due to lordosis, commonly known as sway-back, which had been aggravated by over-weight. Although Dr. Massie was not asked as to what remedies he prescribed, appellee said that he advised her to exercise all summer to strengthen the back and neck muscles, to diet, and to sleep on boards. He also gave her some pills.

It may be significant that appellee said that Dr. Massie prescribed also that she should wear a collar for her neck. The wearing of the collar was demonstrated on the trial by appellee for the benefit of the jury. She said that she wore it periodically from April until the summer was over, despite Dr. Massie's statement that he did not see her until May 26, 1956.

■ In her complaint, appellee claimed damages for permanent impairment of her ability to earn money. This was abandoned. An instruction on pain and suffering alone was given. The slight visible injury, a bruise on the hip, and complete lack of medical attention sought or obtained except, apparently, for the purpose of trial, coupled with appellee's continuation of normal activities, teaching and attending school, touring the country, doing housework, and having a baby, indicate that appellee's pain and suffering did not amount to much. Her medical expenses consisted of $80 to the Good Samaritan Hospital and $48 to Dr. Massie. Although she claimed prolonged suffering from aches and pains in her head and neck, no claim was proved for the cost of medicine or medical attention which normally would have been obtained in an attempt to gain relief.

Under this proof, the allowance of $5,000 for damages is excessive. Berio v. Talley, Ky., 269 S.W.2d 185; Shely v. Jeter, 309 Ky. 323, 217 S.W.2d 804; Ken-Ten Coach Lines v. Siler, 303 Ky. 263, 197 S.W.2d 406; Greer v. Summerfield, 308 Ky. 674, 215 S.W.2d 574; Perry v. City of Cumberland, 312 Ky. 375, 227 S.W.2d 411; Commercial Carriers, Inc. v. Matracia, Ky., 311 S.W.2d 565.

The issue of damages only should be retried. Smith v. Webber, Ky., 282 S.W.2d 346; Beasley v. Evans' Adm'x, Ky., 311 S.W.2d 195.

The judgment is affirmed on the issue of liability and is reversed for a new trial on the sole issue of the amount of damages.