**CITY OF RUSSELLVILLE, Kentucky,
Appellant,**

v.

**John W. GREER et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 29, 1968.

As Modified on Denial of Rehearing
April 25, 1969.

William G. Fuqua, Russellville, for appellant.

J. Granville Clark, W. S. Jones, Russellville, for appellees.

CLAY, Commissioner.

This is an unusual case. Appellee Greer suffered personal injuries at an intersection collision in Russellville when the automobile he was driving on Second Street struck one being driven by appellee McKinney on Breathitt Street. Greer successfully asserted a claim against the appellant city on the ground that the city's negligent failure to maintain a STOP sign on Breathitt Street (which would have induced McKinney to stop) was the proximate cause of the collision. The jury awarded Greer $10,000 against the city and exonerated McKinney. The city asserts numerous grounds for reversal, but we think that determination of the basic issue of municipal tort liability is dispositive of the case.

There was introduced in evidence what purports to be a city ordinance enacted in 1928. It provided that "all streets in the City of Russellville running East and West shall have the right of way over streets running north and south except Main Street * * *."

Second Street runs east and west and Breathitt Street north and south. It is the position of Greer, upheld by the verdict, that it was the duty of the city to implement this ordinance by maintaining a STOP sign on Breathitt Street at the intersection of Second Street to warn motorists on Breathitt Street that traffic on Second Street had the right of way. McKinney had failed to stop.

It is not clear from the record what traffic signs were erected or maintained in conformity with this ordinance. It does appear that at one time a STOP sign at this intersection was placed on Breathitt Street but it was removed at least six months, and perhaps several years, before the accident involved.

Appellant contends the ordinance was invalid for several reasons but we will assume, without deciding, its validity. Ordinance or no ordinance, we have concluded the city committed no tort which would create liability to appellee Greer.

The precise question we have here was decided in 1939 in Martin v. City of Winchester, 278 Ky. 200, 128 S.W.2d 543. Therein we held that there was no statutory or other rule of law which mandatorily required a city to maintain STOP signs on its streets (even though thoroughfares were designated by ordinance), and since no such duty to motorists existed, the failure to maintain such signs would not constitute a breach of duty to an injured motorist. The opinion also points out that the traffic regulatory power of a municipality is a governmental, as distinguished from a corporate function, and under the principles then prevailing (which we have recently modified) the municipality was immune from liability. This rule of immunity has been generally followed in other states. See 92 A.L.R. 1495.

In the recent case of Haney v. City of Lexington, Ky., 386 S.W.2d 738, 10 A.L.R.3d 1362, we criticized the contrived distinctions theretofore made between *governmental* and *proprietary* functions of a municipality, the former carrying immunity and the latter subjecting to liability. That opinion emphasizes that municipalities are liable for "ordinary torts" regardless of the label placed on the nature of the function. The opinion did recognize, however, that there were some limits on municipal liability.

In City of Louisville v. Louisville Seed Company, Ky., 433 S.W.2d 638 (decided March 1, 1968), we were again presented

with the difficult question of limitations on municipal liability. In that case the plaintiff had sustained property damage by reason of the city's neglect to install a gate in the municipal floodwall system when the Ohio River flooded in March of 1964. Therein it was held that a city's "failure in the ultimate function of government", in providing protection of the general community does not impose liability if the allegedly negligent failure to act may affect the general public unless the injured person has been dealt with separately and apart from the general public, that is, on an individual basis. In effect it was determined that the private injury could not be characterized, as said in Haney, as an *ordinary tort*.

It is evident that though Haney and the Louisville Seed Company opinions sought a nontechnical ground for determining municipal liability or nonliability, they are entirely consistent with and sustain the soundness of the above cited 1939 decision in Martin v. City of Winchester, 278 Ky. 200, 128 S.W.2d 543. The regulation of traffic is a function of government, initiated and implemented for the protection of the general public, similar to fire protection, police protection or flood protection. But a municipality owes no legal duty to individual members of the public to fully perform that function. Therefore, a failure of performance does not constitute a tort committed against an individual who may incidentally suffer injury or damage, in common with others, by reason of such default.

It is true that in California and New York liability has been imposed on a municipality for failure to maintain a STOP sign on a secondary street but the decisions on this point were based upon duties created by statute. Irvin v. Padelford and City of Pomona, Calif., 127 Cal.App.2d 135, 273 P. 2d 539; Nuss v. State, 301 N.Y. 768, 95 N.E.2d 822; Murphy v. DeRevere, 304 N.Y. 922, 110 N.E.2d 740. See also Eastman v. State, 303 N.Y. 691, 103 N.E.2d 56 (a suit against the state).

Our attention is called to two cases from foreign jurisdictions where no statutory duties were involved. In Firkus v. Rombalski, 25 Wis.2d 352, 130 N.W.2d 835, both drivers at an intersection collision, and the city in which the accident happened, were found to be negligent. A STOP sign at the intersection had been removed 19 days before by vandals. The Wisconsin court took the view that a city which had erected a STOP sign at an intersection had a continuing duty to maintain such sign "as a safety precaution to the traveling public who has a right to rely on its presence".

Wagshal v. District of Columbia, D.C., 216 A.2d 172, involved a situation similar to the one we have here. Equating the failure to maintain a STOP sign which had once been erected to a defect in the street, the District of Columbia Court of Appeals held that a city could be liable to the driver of the automobile on the through thoroughfare.

We have read these opinions with interest but are not persuaded that they establish a sound or sufficiently definitive principle of law. They draw analogies which do not appear logical or reasonable. The Wisconsin opinion points out that "the creation of the right of reliance is the basis of the duty owed by the city". What right of reliance? The very existence of an intersection is open notice of potential traffic hazards created by crossing traffic. Who has the right to rely on what? While signs and signals at intersections may lessen traffic hazards, the possible moral obligation of a city to the public to provide or maintain particular safeguards reasonably cannot be translated into a legal duty to certain members thereof.

Another difficulty with the reliance theory is that it would differ from motorist to motorist, depending on his familiarity with or his expectations concerning traffic signs at a given intersection. The difficulty is illustrated in the present case. On what could appellee reasonably rely? On the existence of a sign which had been non-

existent for many months or years? Is the duty owed to local residents and not to strangers? Could a city fairly be required to post notices on one street that STOP signs *had been removed* from crossing streets? What sort of sign must this be, and could it ever be taken down? We think the questions we have posed point up the inadequacy of the principle apparently followed in the Wisconsin case as a rule of law.

The District of Columbia opinion is based on the theory that the failure to maintain a STOP sign constitutes a *defect* in the street, which was there recognized, as in Kentucky, as a ground of liability. This very question was carefully considered in the Martin case, hereinbefore cited. It was there held that municipal liability for defects in streets (which was noted as an exception of questionable soundness) related only to *physical* defects on the street itself, not traffic controls. We are not persuaded that municipal liability for street defects may be further expanded to encompass the failure to maintain a STOP sign.

■■ As we have hereinbefore pointed out, the erection and maintenance of street signs is a matter of traffic regulation legislated as a police measure for the protection of the public generally and the city does not owe a legal duty to any motorist to continue any specific regulation or any particular sign. Under the principles set forth in the Martin and Louisville Seed Company cases, the appellant city owed no duty to appellee Greer to maintain a STOP sign anywhere in Russellville. Consequently it committed no negligent act as to him in failing to have one on Breathitt Street. There was no basis for municipal liability.

The appellant raises other questions which it is unnecessary to consider.

The judgment is reversed, with directions to enter judgment for appellant.

All concur.

MONTGOMERY, Chief Justice, concurring.

I concur on the ground that the City of Russellville is not liable under the ancient doctrine of sovereign immunity.