James WIREMAN, Willard G. Stephens, Trustees, and all other trustees, Church of God, Greenup, Kentucky, and Church of God of Greenup, Kentucky, Appellants,

v.

CITY OF GREENUP, Kentucky, a Municipal Corporation, Appellee.

Court of Appeals of Kentucky.

Jan. 19, 1979.*

Rehearing Denied April 6, 1979.

Discretionary Review Denied June 26, 1979.

Stanley R. Hogg, Ashland, for appellants.

Phillip Bruce Leslie, Greenup, for appellee.

Before HAYES, HOWARD and PARK, JJ.

PARK, Judge.

This case is an appeal from a summary judgment by the Greenup Circuit Court entered in favor of the defendant-appellee, City of Greenup, in an action in which the plaintiff-appellants, Church of God and its trustees, alleged that church property was damaged by excavation for a city sewer line. The city has interposed the defense of sovereign immunity.

---

* The decision of the panel was made prior to January 1, 1979, but the opinion was not rendered until this date.

On December 19, 1974, the city entered into a contract with C & C Construction Company for improvements to the city sewer system. C & C agreed to perform the construction according to plans submitted by Kenco Associates, Inc., the engineering firm hired by the city.

Although the city was required to furnish the right of way necessary to install the sewer line, the Church of God denies having signed a right of way easement consenting to the construction. However, Kenco's president, David Osborne, testified that the city had easements executed by the property owners, and an easement agreement purportedly signed by the appellants Wireman and Stephens as trustees of the Church of God is a part of the record.

The Church of God building which was damaged was constructed in 1954 and has a concrete block foundation. The front of the building is approximately eight (8) feet from the property line of the highway. The plans submitted by Kenco indicated that the sewer line and right of way would be located near the front steps of the church building. The Church of God contends that C & C Construction Company changed the proposed location of the sewer line and in fact placed it six (6) feet closer to the building acting on the basis of oral instructions from Kenco. Kenco denied that the position of the pipeline was changed.

C & C excavated a ditch for the pipeline thirty-six (36) inches wide and eight (8) feet deep in front of the church. According to the Church of God, this excavation extended beyond the boundaries of the purported easement and exposed the entire foundation of the building. The front wall of the church collapsed shortly thereafter.

According to the Church of God, the city had been warned by the construction company that moving the pipeline closer to the church could result in damage to the building. Some testimony indicated that the mayor informed the contractors the matter was out of his hands and instructed them to follow the engineer's orders.

The Church of God filed suit against the City of Greenup for the damage caused to church property. The city denied liability but cross-claimed against C & C Construction Company for indemnity in the event it should be found liable. C & C denied liability and filed a third party complaint against Kenco alleging that Kenco was liable to them if C & C was found liable to any party. The church subsequently filed an amended complaint which named Kenco as a defendant.

On December 21, 1977, after the taking of discovery depositions, the court granted a summary judgment in favor of the city. When a motion to set aside the summary judgment was denied, the church brought this appeal. The church contends that the action taken by the city constituted a trespass in that no right of way easement was obtained before the construction. As a defense to the action, the city raises the doctrine of sovereign immunity.

In Kentucky, the old "governmental-proprietary" distinction regulating municipal tort immunity was discarded in *Haney v. City of Lexington,* Ky., 386 S.W.2d 738 (1964). However, the court made it clear that immunity would still be available to municipal corporations to protect the city in the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions. 386 S.W.2d at 742. This principle was reaffirmed in *City of Louisville v. Chapman,* Ky., 413 S.W.2d 74 (1967). However, subsequent decisions have not relied upon these distinctions in redefining the boundaries of sovereign immunity in the wake of *Haney* and *Chapman.* Instead, the court adopted a new analysis in *City of Louisville v. Louisville Seed Company,* Ky., 433 S.W.2d 638 (1968). Although relying on the basic premise that immunity no longer existed as a general rule, the court announced the following principle:

A different situation arises when a claimant seeks to hold the city liable for a risk which is inherently part of the carrying on of the function of government, such as its failure to provide fire protection, police protection or, as here flood protection. We refer only to the ultimate failure and not to the situation where the

city is engaging in activities with the citizen on a person to person basis . . . Where the act affects all members of the general public alike, it would be unreasonable to apply to it the broad principles of tort liability . . . . But, when the city, by its dealings or activities, seeks out or separates the individual from the general public and deals with him on an individual basis, as any other person might do, it then should be subjected to the same rules of tort liability as are generally applied between individuals.

433 S.W.2d at 643.[1]

More recently, the Supreme Court has held that the nonliability of a city in a tort action need not rest on the doctrine of governmental immunity at all. *Frankfort Variety, Inc. v. City of Frankfort,* Ky., 552 S.W.2d 653 (1977); *City of Russellville v. Greer,* Ky., 440 S.W.2d 269 (1969). In the *Frankfort Variety* case, the court held that the city was not liable for damages suffered due to the negligence of city firemen since the city owed no duty to the appellants. 552 S.W.2d at 655.

■ In this case, the city was under a duty to the Church of God. The Kentucky Constitution expressly provides, "Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them . . . ." Kentucky Constitution § 242. A number of cases under that section of the Constitution have held municipalities liable under the law of eminent domain or "reverse condemnation" for damage to private property caused by the construction of sewer lines or other public projects.[2] *See Blair v. City of Pikeville,* Ky., 384 S.W.2d 65 (1964); *City of*

*Newport v. Rosing,* Ky., 319 S.W.2d 852 (1958); *City of Cumberland v. Central Baptist Church,* 305 Ky. 283, 203 S.W.2d 57 (1947); *City of Covington v. Parsons,* 258 Ky. 22, 79 S.W.2d 353 (1935); *O'Gara v. City of Dayton,* 175 Ky. 395, 194 S.W. 380 (1917).

■■ Where a city takes, injures or destroys private property for a public purpose without making just compensation therefor, the fact that the city may be entitled to plead sovereign immunity as a defense to an action in tort is wholly immaterial. *See O'Gara v. City of Dayton, supra.* Indeed, there need be no showing of negligence at all, and the city may even be liable for the actions of *independent contractors* who accurately followed project plans and specifications. *City of Covington v. Parsons, supra; see Blair v. City of Pikeville, supra; City of Cumberland v. Central Baptist Church, supra.*

The facts of *City of Cumberland v. Central Baptist Church, supra,* are strikingly similar to the facts of this case. There the City of Cumberland employed an independent contractor to install a sewer line along a street in the rear of the plaintiff church. In doing so, the contractor opened a ditch four (4) feet from the church wall which had the effect of removing the lateral support of the property. Shortly thereafter, a crack in the building appeared which progressively widened until it ultimately required the corner of the building to be reconstructed. The court upheld a verdict for the plaintiff church. 305 Ky. at 285, 203 S.W.2d at 58.

■ While we are fully aware that the alleged agreement between the parties in

---

1. Although the court was sharply critical of the old governmental-propriety function test in the *Louisville Seed Company* case, *see* 433 S.W.2d at 640, fn. 1, it has been suggested that the new test adopted therein is ultimately very similar to the original test. *See Richmond's Adm'r v. Louisville and Jefferson County Metropolitan Sewer Dist.,* Ky.App., 572 S.W.2d 601 (1978).

2. Despite the apparent failure of the church to proceed on the theory of eminent domain be-

low, we feel justified in raising that issue here since we are merely following the example set by the court in *O'Gara v. City of Dayton,* 175 Ky. 395, 194 S.W. 380 (1917). Appellate courts are not necessarily restricted to the arguments of counsel but have responsibility to the litigants for resolving cases on their merits. *First National Bank of Louisville v. Progressive Casualty Insurance Co.,* Ky., 517 S.W.2d 226 (1974).

this case purports to resolve the question of damages for construction of the sewer line,[3] we do not feel the trial court would be justified in granting summary judgment on that basis alone. First, there is a genuine issue of material fact as to whether there in fact existed a valid easement agreement between the parties. Second, even if the alleged agreement was valid, there was certainly an issue as to whether the sewer line had been moved such that the construction activities may have extended beyond the legitimate scope of the easement. *See Blair v. City of Pikeville, supra,* 384 S.W.2d at 68. Third, if the alleged agreement is in fact valid, there clearly remains an issue as to whether the city failed to maintain the easement so as to prevent "unreasonable damage" to the adjacent property of the church. In an analogous situation in *Blair,* the court stated:

> Neither the city nor [the independent contractor] may be absolved from liability on the mere basis that the work was done without negligence according to plans and specifications. First, there must be a determination that the plans and specifications were in furtherance of a *reasonable* use of the easement, considered in light of the existing use of the property by appellant. It may not be doubted that had the plans required demolition of the residence, a serious question as to their being reasonable would have been presented.

384 S.W.2d at 67.

Because there were genuine issues of material fact, we hold that it was error to grant summary judgment to the City of Greenup. *Boyd v. Badenhausen,* Ky., 556 S.W.2d 896 (1977); *Young v. White,* Ky. App., 551 S.W.2d 12 (1977); CR 56.03.

The judgment of the circuit court is reversed for further proceedings consistent with this opinion.

All concur.

---

3. The alleged agreement states in relevant part:

The consideration hereinabove recited shall constitute payment in full for any damages to the land of the GRANTOR, his successors and assigns, by reason of the installation, operation, and maintenance of the structures or improvements referred to herein. The GRANTEE covenants to maintain the ease-

ment in good repair so that no *unreasonable damage* will result from its use *to the adjacent land* of the GRANTOR, his successors and assigns (emphasis added).

