COMMONWEALTH of Kentucky,
DEPARTMENT OF BANKING
AND SECURITIES, Appellant,

v.

Arthur W. BROWN, Receiver, Prudential
Building and Loan Association, et
al., Appellees.

Supreme Court of Kentucky.

Sept. 2, 1980.

Steven L. Beshear, Atty. Gen., Robert L. Chenoweth, Deputy Atty. Gen., for appellant.

James N. Williams, Jr., Sheryl G. Snyder, David C. Fannin, Janet G. Marcum, Wyatt, Grafton & Sloss, Louisville, for appellees.

## OPINION OF THE COURT *

This matter is before us on a Motion for Review from the Court of Appeals of this Commonwealth. We granted such motion

---

* Justices Stephens and Sternberg, having declared themselves disqualified, did not participate in the consideration of this case, and were replaced by Hon. Fred M. Goldberg and Hon. Charles Landrum, Jr., serving as Special Justices by appointment of the Governor pursuant to Sec. 110(3) of the Constitution.

because there appears to be some confusion as to the meaning of KRS Chapter 44 (Board of Claims Act).

This action arose in the Board of Claims pursuant to KRS 44.070. It is bottomed upon the alleged malfeasance of the Commonwealth, acting through its Department of Banking and Securities in the regulation of the American Building and Loan Association and Prudential Building and Loan Association under the provisions of KRS 289.710. *The Board of Claims found the examiners of the Department of Banking and Securities were derelict in not ascertaining and not reporting the true condition of the records of the Associations.* We agree.

Both lower courts held, and the Appellees here posture, that in Kentucky when the state government takes upon itself a regulatory function and negligently performs that function the Board of Claims Act waives both constitutional and common law immunity; and, as a result the state is liable as any other individual or corporation. The Commonwealth contends to the contrary. It is now incumbent upon us to define the duty and liability of state government to those persons injured by such performance.

Section 231 of the Constitution of Kentucky accords the Commonwealth absolute immunity from suit until such time as the General Assembly elects to subject the Commonwealth to claims against it. See: *Bach v. Bach*, 288 S.W.2d 52 (Ky., 1956). In 1946, the General Assembly enacted the first Board of Claims Act, limiting its application to personal injury or property damage due to negligence in the construction, reconstruction, maintenance and policing of highways by the Department of Highways. See: former KRS 176.290 [renumbered as KRS 44.070 by Statute Reviser (1950)]. In 1950, the General Assembly extended the jurisdiction of the Board of Claims to negligence on the part of the Commonwealth, any of its departments or agencies, or any of its agents or employees *while acting within the scope of their employment.* See: KRS 44.070.

Prior to 1946, there was no body of law defining the obligation or duty of the Commonwealth in situations such as the matter at bar. There was, however, a body of law which established the parameters of the application of tort liability to municipalities. This body of law was predicated upon the fact that municipalities are governmental bodies which have never been protected by constitutional immunity under Section 231 of the Constitution. Hence, the liability vis–a–vis non–liability of municipalities for injuries resulting from malfeasance in the execution of certain of their functions, was based upon the public policy of this Commonwealth as developed by the courts.

This was the state of the law at the time of the enactment of the Board of Claims Act by the General Assembly. By such act, the General Assembly concluded to waive–at least in part–the constitutional immunity which had theretofore been enjoyed by the Commonwealth and to allow it to be answerable before the Board of Claims for the negligence of its officers and agents. See: KRS 44.070. However, we perceive that the extent of the waiver of such constitutional immunity was limited by KRS 44.120, which provides:

"An award shall be made only after consideration of the facts surrounding the matter in controversy, and no award shall be made unless the Board is of the opinion that the damage claimed was caused by such negligence on the part of the Commonwealth or its agents *as would entitle claimant to a judgment in an action at law if the state were amenable to such action".* (Emphasis ours.)

The phrase: ". . . as would entitle claimant to a judgment in an action at law if the state were amenable to such action" has been relied upon both parties to this appeal in support of diametrically opposed propositions. This forces us to interpret its impact upon the Commonwealth.

■ It must, of course, be presumed that *the Legislature is aware of the status of the law at the time of the enactment of a statute. Cook v. Ward,* 381 S.W.2d 168

(Ky., 1964). Thus, by use of this phraseology, we perceive that the General Assembly intended the Board of Claims Act to be a limited waiver, placing the Commonwealth in the same posture in actions under such Act as municipalities enjoy under the common law as it has been developed and applied to them in this state. The Board of Claims Act did not create new causes of action. See: *University of Kentucky v. Guynn*, 372 S.W.2d 414 (Ky., 1963). Some seventeen years have passed since the *Guynn* decision, and the Legislature has not addressed itself to that decision. Thus, the Legislature adopts our reasoning in *Guynn*. See: *Cave Hill Cemetery Co. v. Gosnell*, 156 Ky. 599, 161 S.W. 980 (1913). It appears that the Legislature did not intend to assess any duty or obligation upon the Commonwealth otherwise not applicable to other governmental entities under the common law. It follows that the intent of the General Assembly in the enactment of the Board of Claims Act was a waiver of the constitutional immunity of the Commonwealth to allow it to be treated in the same manner the common law treats municipalities.

■ The arguments and authorities advanced by Appellees that the Commonwealth was intended to be treated as an individual requires the straining of the language of KRS 44.120. The argument primarily rests upon the Federal Torts Claim Act (28 U.S.C., § 2674) and the Florida Torts Claim Act (Section 768.28, Fla.Stat.) and is inapposite. Both of these statutes, by express terms, provide that the government is to be treated as if it were a private individual. Our statute mandates no such treatment of the Commonwealth.

■ Given the foregoing, we hold that the Commonwealth of Kentucky, under the Board of Claims Act, enjoys the same status as municipalities under the common law of this state. That status is defined in our decisions in *City of Louisville v. Louisville Seed Company*, 433 S.W.2d 638 (Ky., 1968); *City of Russellville v. Greer*, 440 S.W.2d 269 (Ky., 1969); *Frankfort Variety, Inc. v. City of Frankfort*, 552 S.W.2d 653 (Ky., 1977);

and *Grogan v. Commonwealth*, 577 S.W.2d 4 (Ky., 1979).

■ As we noted in *Grogan*, governmental bodies "simply are not the same animals" as individuals and private corporations. As a result, the traditional "duty" analysis applied in actions for negligence against individuals is not appropriate in suits against governmental bodies.

■ There is no public policy requiring government to guarantee the success of its efforts. When the governmental entity is performing a self–imposed protective function as it was in the case at hand, the individual citizen has no right to demand recourse against it though he is injured by its failure to efficiently perform such function. Any ruling to the contrary would tend to constitute the Commonwealth an insurer of the quality of services its many agents perform and serve only to stifle government's attempts to provide needed services to the public which could not otherwise be effectively supplied.

We, of course, concede that the state may act imperfectly at times; but such is the risk which this Court believes is the natural concomitant of our form of government. We perceive that the public interest is better served by a government which can aggressively seek to identify and meet the current needs of the citizenry, uninhibited by the threat of financial loss should its good faith efforts provide less than optimal–or even desirable–results. Thus, we here accord the Commonwealth that unique consideration which it deserves when it acts in a capacity which has no comparable counterpart in the private sector. As we said in *Frankfort Variety*, and reiterated in *Grogan*, ". . . a city's relationship to individuals and to the public is not the same as if the city itself were a private individual or corporation and its duties are not the same". We hold that the rule is the same as to the Commonwealth.

■ We will not here indulge in the niceties of academic analysis to define whether there is a duty upon the Commonwealth, the liability for which is shielded by com-

mon law immunity, or whether no duty exists for actions by the Commonwealth in its unique role. We leave such niceties to the academicians. The pragmatic effect of our holding is that under the Board of Claims Act, the Commonwealth has no common law liability for the malfeasance of its agents in the performance of obligations running to the public as a whole. It follows that in the matter at bar, the Commonwealth is not liable for the derelictions of its bank examiners in the performance of their regulatory function.

We, of course, recognize that Section 231 of the Constitution of this Commonwealth grants the General Assembly the exclusive authority to decide when and under what conditions the Commonwealth will allow itself to be subjected to suit. If we have here misinterpreted its intent we are sure that it will clarify its position in future legislation.

The judgment is reversed with directions that the case be dismissed.

All concur.