**Lucille ZANELLA, et al.,**

v.

**CITY OF GRAND RIVERS, et al.**

**Civ. A. No. 85–0306–P(CS).**

United States District Court,
W.D. Kentucky,
Paducah Division.

June 8, 1988.

Irvin D. Foley, Lisa Koch Bryant, Reisz, Brown & Rosenbaum, Louisville, Ky., for plaintiffs.

Thomas B. Russell, Whitlow, Roberts, Houston & Russell, Paducah, Ky., for intervening plaintiff, State Farm Mut. Auto. Ins. Co., and third-party defendant, F.B. Ins. Co.

Francis T. Goheen, Paducah, Ky., for defendant, Charles T. Bradley, and third-party plaintiff, F.B. Ins. Co.

Jon Pancake, Hardy, Terrell & Boswell, Paducah, Ky., for defendant, City of Grand Rivers, Ky.

## MEMORANDUM OPINION AND ORDER

SIMPSON, District Judge.

This action arises from a motor vehicle accident that occurred August 4, 1985, at the intersection of Commerce Avenue and State Highway 453 within the corporate limits of the City of Grand Rivers, Kentucky. As a result of the accident, plaintiff, Lucille Zanella, sustained injuries for which she seeks recovery from the City of Grand Rivers (hereinafter "Grand Rivers") and the driver of the other vehicle involved in the accident, Charles T. Bradley. As againt Grand Rivers, the plaintiff alleges in her complaint that it was negligent in failing to maintain a stop sign or other traffic warning device at the intersection. This matter is before the Court on motion by Grand Rivers for summary judgment in its favor pursuant to Rule 56, Fed.R.Civ.P. Jurisdiction exists pursuant to 28 U.S.C. § 1332.

Interpreting the facts in a light most favorable to Zanella,[1] they may be stated as follows. In the late 1960s, the State of Kentucky proposed a new highway to be constructed along the west side of the city limits of Grand Rivers. As proposed, new Highway 453 would intersect several city streets including Commerce Avenue. Prior to its construction, Grand Rivers conveyed "all of its right, title and interest in certain rights of way to the state." (Exhibit No. Five, Deposition of John H. O'Bryan). The deed was authorized by city ordinance and contained rights of way at all intersections created by the new Highway 453 transversing any city street. In addition, Grand Rivers and the Kentucky Department of Highways executed an agreement which states, in pertinent part, as follows:

(4) The Department and the City agree that when the project is completed and open to traffic, no traffic control device

(citation omitted).

1. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)

such as, but not limited to, signals, signs, islands and pavement markings, nor a sign of any sort shall be located within the rights of way of the subject project except by the Department or by authority of the Department and that the Department shall have the right to locate, install and maintain all such devices.

(5) The City agrees to prescribe by Ordinance pursuant to paragraph 9 [actually paragraph 8], fines and other reasonable sanctions for violation of parking regulatory signs and other traffic control devices as may be installed by the Highway Department or upon authority of the Highway Department.

(6) The City agrees through its own forces including peace officers and other personnel to enforce compliance of the traffic control devices installed by or upon authority of the Department. (Exhibit No. Four, Deposition of John H. O'Bryan).

Thereafter, the new highway was completed as planned with the State having a right of way extending three hundred (300) to four hundred (400) feet east and west of the point where Highway 453 intersected Commerce Avenue.

On the date of the accident, Zanella and her two sons were traveling by automobile west on Commerce Avenue. Bradley and his wife were traveling south by automobile on Highway 453. The stop sign, normally in place at the corner of Commerce Avenue facing westbound traffic, was missing.[2] Weather conditions were clear, the road was dry. (Deposition of C.M. Riggs, p. 3). The intersection is considered to be a blind-type intersection. *Id.* Without stopping at the intersection, the Zanella vehicle proceeded onto Highway 453. Immediately thereafter, the Zanella and Bradley vehicles collided.

As a party moving for summary judgment, Grand Rivers has the burden of proving the nonexistence of any genuine issue of material fact and its entitlement to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–60, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir.1976). Once the defendant has sustained its initial burden, then it is incumbent on the nonmovant to "set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

In support of its motion, Grand Rivers contends that it did not have a duty to maintain the stop sign and may not be held liable for the negligent maintenance thereof. In the alternative, Grand Rivers asserts that, even if it had a duty, Grand Rivers relinquished its control over the right of way and any duty associated therewith by execution of the City–State contract and conveyance of the right of way to the State.

When a federal court is confronted with an issue regarding state law in a diversity action, it is the Court's responsibility to decide the issue as a Kentucky court would within the mandate of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1290 (6th Cir.1982) (citation omitted). Accordingly, this Court must "ascertain from all available data what the state law is and apply it"; *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir.1985) (citation omitted); in the exercise of its best judgment. *Bagwell v. Canal Ins. Co.*, 663 F.2d 710, 712 (6th Cir.1981).

With regard to a municipality's duty to properly construct and maintain streets within its corporate limits, the general rule has been stated as follows:

The rule is quite universal, in this and other jurisdictions, that municipalities must exercise ordinary care and reason-

---

**2.** A question of fact exists regarding the length of time the stop sign had been missing. It may have been at least four (4) weeks (Deposition of James Reed, pp. 9–10) or only for a day or possibly two days. (Deposition of David Fox, p. 8). The record is unclear with regard to the governmental entity that actually installed the stop sign. However, a state highway official remembers the sign being there since at least 1972. (Affidavits of Hubert Rudd, pp. 5–6, and Jack Edwards, pp. 3–4).

able diligence to keep the streets and sidewalks therein in a reasonably safe condition for travel, and if they should negligently fail to do so they are liable for consequent injuries to a traveler thereon ...

*Wyatt v. City of Henderson,* 222 Ky. 292, 294, 300 S.W. 921 (1927).

This rule relates to the existence of defects in the construction and maintenance of city streets and liability may not attach unless the municipality has "actual notice of the defects producing the unsafe condition, or such dangerous condition must have existed for such a length of time as that the proper city authorities could have obtained knowledge by the exercise of ordinary care and reasonable diligence." *Id.,* 222 Ky. at 296, 300 S.W. 921.

In later cases, Kentucky courts have held that the general rule enunciated in *Wyatt* is inapplicable to instances wherein an injured party alleges that a municipality was negligent for failing to erect and maintain a stop sign at a particular intersection in compliance with a state law or ordinance. *City of Russellville v. Greer,* 440 S.W.2d 269, 272 (Ky.1968); *Martin v. City of Winchester,* 278 Ky. 200, 203–04, 128 S.W.2d 543 (1939).

The distinction made in *Martin* and later followed in *City of Russellville* was that the responsibility to construct and maintain streets in a safe, non-negligent manner was a corporate duty while the erection and maintenance of a stop sign was a matter of traffic regulation falling within the regulatory power of a municipality "legislated as a police measure for the protection of the public in general". *City of Russellville,* supra; *Martin,* 278 Ky. at 205, 128 S.W.2d 543. Hence, the municipality did not "owe a legal duty to any motorist to continue any specific regulation or any particular sign". *City of Russellville,* supra.[3]

In its most recent case reaffirming municipal liability, the Kentucky Supreme Court described the result attained in *Russellville* as "unsatisfactory"; *Gas Service Co., Inc. v. City of London,* 687 S.W.2d 144, 148 (Ky.1985); and overruled *Russellville* as well as other cases. *Id.,* 687 S.W. 2d at 149 ("The functions being carried out by municipal employees in these cases do not qualify for municipal immunity under the doctrine laid down in *Haney* ").[4]

Grand Rivers contends that *Gas Service* merely reaffirms the existing rule against municipal immunity for its negligent acts as set forth in *Haney,* supra, but did not affect the preliminary inquiry for finding negligence, that is, a duty on the part of the municipality. The defendant is mistaken. "The traditional 'duty' analysis applied in actions for negligence against individuals is not appropriate in suits against governmental bodies." *Com., Dept. of Banking & Securities v. Brown,* 605 S.W.2d 497, 499 (Ky.1980) (applying the common law regarding municipal liability). With regard to the necessity of a preliminary determination of whether or not a municipality has a duty in a negligence action, the Kentucky Supreme Court stated as follows:

A variety of legalisms have been suggested as helpful in understanding the rule in *Haney* as modified by *[City of Louisville v.] Louisville Seed Co.* [Ky., 433 S.W.2d 638 (1968) ]/*Frankfort Variety [Inc. v. City of Frankfort Ky.,* 552 S.W.2d 653 (1977) ]. These include duty/not duty and misfeasance/nonfeasance terminology. The abstract resolution of whether there is a duty is invariably result oriented, a question of policymaking involving the weighing of interests and a conclusion based on whether the court's conscience is, or is not, comfortable with the result. Classifying a situation as misfeasance or nonfeasance

---

3. "The regulation of traffic is a function of government, initiated and implemented for the protection of the general public, similar to fire protection, police protection or flood protection. But a municipality owes no legal duty to individual members of the public to fully perform this function. Therefore a failure of performance does not constitute a tort committed against any individual who may suffer injury or damage, in common with others, by reason of such default." *City of Russellville,* 440 S.W.2d at 271.

4. *Haney v. City of Lexington,* 386 S.W.2d 738 (Ky.1964).

is much the same. These classifications, like the old governmental versus proprietary classification, in the long-run prove arbitrary pigeonholes for conclusions arrived at intuitively.... The concept of liability for negligence expresses a universal duty owed by all to all. The duty to exercise ordinary care commensurate with the circumstances is a standard of conduct that does not turn on and off depending on who is negligent. With a municipal corporation as with all other legal entities, the question is not whether such a duty exists, but whether it has been violated and what are the consequences. Constitutionally, statutorily, or by court decisions, on occasion we excuse the nonperformance of this duty [footnote omitted], but no purpose is served by denying its existence.

*Gas Service*, 687 S.W.2d at 148.

Accordingly, the general rule regarding municipal liability in negligence actions may be stated as one whereby the duty is assumed to exist and liability for its breach follows if it is proven that the municipality failed to exercise reasonable care under the circumstances. However, the inquiry by this Court does not end at this juncture.

In *Gas Service*, the Kentucky Supreme Court recognized two exceptions to this rule. A city may not be liable for supposed wrongs committed in the exercise of its "quasi-legislative or quasi-judicial functions". *Id.* at 149 citing *Haney*, supra. Under these exceptions, the municipality may not be liable for having failed to prevent an injury by the proper exercise of its regulatory functions. *Id.* The *Gas Service* court noted two Kentucky cases that would offer guidance in the application of these exceptions by courts; *Com., Dept. of Banking & Securities v. Brown*, supra; *Grogan v. Com.*, 577 S.W.2d 4 (Ky.1979).

These exceptions are applicable when a government entity passes a law for the protection of the public wherein the law requires the municipality to perform some

act for the protection of its citizens. See *Dept. of Banking & Securities*, 605 S.W.2d at 499; *Grogan*, 577 S.W.2d at 6. Application of such an exception is justifiable in these instances since:

> Any ruling to the contrary would tend to constitute the Commonwealth [or municipality][5] an insurer of the quality of services its many agents perform and serve only to stifle government's attempts to provide needed services to the public which could not otherwise be effectively supplied.

*Dept. of Banking & Securities*, supra.

In *Dept. of Banking & Securities*, the Court held that the State Department may not be held liable for the failure of its bank examiners to adequately perform their regulatory function of ascertaining and reporting the true condition of records of Building and Loan Associations. *Id.*, 605 S.W.2d at 500. In *Grogan*, supra, the Court held that the City of Southgate could not be held liable to persons injured in the Beverly Hills Supper Club fire because city officials allegedly failed to enforce laws and regulations related to safety standards for the proper construction and use of buildings. *Grogan*, supra.

The exceptions enunciated in *Gas Service*, as interpreted by this Court in light of *Grogan* and *Dept. of Banking & Securities*, are applicable to the installation of traffic control devices by municipalities. The power and authority of a municipality to regulate traffic is clearly analogous to the power and authority of a city to establish safety standards for the construction and use of buildings. Both are within the legislative and regulatory powers of cities.

However, the same analysis is not applicable in the case of a stop sign or other traffic control device already installed or erected but missing or malfunctioning. The exercise of legislative/regulatory power occurs when a city requires a stop sign to be placed at a specific location. After the initial installation, an absent or errant

---

**5.** In *Dept. of Banking & Securities*, the Court determined that, because of provisions contained in the Kentucky Board of Claims Act, the State Department of Banking and Securities enjoyed the same status as a municipality with regard to its exposure for liability under the circumstances presented by the action. *Id.*

traffic control device is comparable to a defect in the roadway causing an unsafe condition for travelers thereon.[6]

This result is not inapposite to the stated law in Kentucky. In *Martin v. City of Winchester,* supra, the Court held that a city could not be liable on a theory of negligence when the municipality did not erect and maintain a traffic control device at the intersection of two roads, one of which had been designated as a superior road by city ordinance. *Id.,* 278 Ky. at 203, 128 S.W.2d 543. The Court characterized plaintiff's action as one challenging the non-enforcement of a traffic regulation requiring a driver on the lesser road to yield the right of way to a driver on the superior road; *Id.* Accordingly, the failure of installation did not constitute a defect in the street itself. *Id.*

In *City of Russellville,* supra, the plaintiff also alleged that the city was negligent in its failure to erect and maintain a stop sign in accordance with a city ordinance that also designated rights of way on certain city streets. The Court noted that it was not clear that a traffic sign had ever been erected or maintained at the intersection at issue and, at best, the evidence appeared to indicate that a stop sign may have been erected and removed by the city six (6) months to several years earlier. *Id.,* 440 S.W.2d at 270. In any case, the Court treated the action as an assertion of negligence by the city for its failure to install the stop sign allegedly required by enactment of the ordinance. On the basis of the rule set forth in *Martin,* supra, the Court refused to expand municipal liability for street defects to encompass a failure to erect and maintain a stop sign under the circumstances. *Id.* at 272.

■ In the instant case, the plaintiff does not allege that Grand Rivers should have erected and maintained a stop sign in accordance with any law or ordinance. The plaintiff's action is premised upon the negligent failure of the City to replace or repair a stop sign already in existence within its corporate limits. This Court will not "indulge in the niceties of academic analysis to define whether there is a duty" upon Grand Rivers. *Dept. of Banking and Securities,* 605 S.W.2d at 499. The recent pronouncement in *Gas Service,* supra, directs this Court to consider only whether such a duty was violated. *Id.* at 148. However, the liability of a municipality is not absolute and the plaintiff is still required to prove negligence, that is, that Grand Rivers failed to exercise ordinary care and reasonable diligence to keep the streets in a reasonably safe condition for travel. *Wyatt,* supra. Hence, liability may not attach unless Grand Rivers had actual notice of the unsafe condition or the dangerous condition existed "for such a length of time as that the proper city authorities could have obtained knowledge by the exercise of ordinary care and reasonable diligence." *Id.,* 222 Ky. at 296, 300 S.W. 921. Since a question of fact exists in this regard; see, footnote 2, supra; Grand Rivers is not entitled to summary judgment based upon the contention that it did not have a duty to repair or replace the stop sign situated at the intersection.

But for the conveyance, contract and transfer of the right of way to the State, this opinion would be at an end. However, having determined that Grand Rivers may be liable for its alleged failure to replace or repair the sign, it is necessary to determine whether or not the transactions between Grand Rivers and the State have any impact on the City's dominion and control over the intersection in question.

A municipality's liability for injuries caused by defects in its streets may be imposed either by statute or the common law. *Perry v. City of Cumberland,* 312 Ky. 375, 227 S.W.2d 411, 413 (1950). The basis for this rule is "the fact that a municipality is ordinarily invested with control of the streets and highways within its corporate limits." *Id.* The liability of the mu-

---

**6.** In *Fryar v. Stovall,* 504 S.W.2d 701 (Ky.1973), the Court rejected a municipality's assertion that the direction of traffic is a governmental function immune from tort liability and held that a city could be liable when a police officer causes injury to a motorist by misdirecting traffic. *Id.* at 703.

nicipality arises from "its dominion over the public place involved", and the municipality may not divest itself of its duty to exercise reasonable care in the repair and maintenance of its streets unless the State Legislature "invests another governmental entity with such dominion." *Id.*

In *Perry,* the plaintiff fractured her ankle when she fell into an open culvert located within the right of way of a state highway within the corporate limits of the City of Cumberland. Her action was premised upon the rule of law stated in *Wyatt,* supra. The Court held that, because the right of way had been conveyed to the State and the State was responsible by statute to maintain the highway, the City was no longer under any duty to keep the street in a reasonably safe condition. *Perry,* 227 S.W.2d at 412. In its finding, the Court relied upon KRS 177.041(1) and (2), and KRS 177.045 which expressly declared that the maintenance of streets forming an integral part of the state highway system is a legitimate state function and that, when city streets are designated as part of the state primary road system by the Commissioner of Highways, "the future maintenance, repair, construction and reconstruction of such streets shall be done" by the Department of Highways. *Id.* at 412–13. Under the circumstances proven in *Perry,* wherein the responsibility for the maintenance of city streets designated as a part of the state primary road system was established by legislative enactment, the claims against the municipality were dismissed. *Id.* However, all of these statutes, Acts 1942, Ch. 30 § 1 and § 5, have been repealed by the Kentucky Legislature. Acts 1964, Ch. 23 § 3. Hence, while the rule of law enunciated in *Perry* is still good law, the statutory underpinnings for the factual finding have since collapsed. As a result, this Court must apply the rule enunciated in *Perry* to the facts of this case in light of statutes presently in existence.

The state primary road system is defined as "public roads and city streets within the state as the department of highways determines shall be established, constructed or maintained by the department." KRS 177.-020(1). With regard to rights of way, they may be acquired by the State as follows:

> The bureau of highways is authorized to acquire and bear the cost of new or additional rights of way needed for establishment, improvement, construction, reconstruction, maintenance or repair of a public road or a city street which has been designated by the bureau of highways as part of the state primary road system. All cities are authorized to deed any right of way owned by such cities to the Commonwealth of Kentucky if the right of way is to become part of the state primary road system.

KRS 177.021.

The Commissioner of Highways, in his discretion, may designate city streets or portions thereof as part of the state primary road system by preparing a record of designation and furnishing the city with a statement of designation. KRS 177.042. As to the powers of the Bureau of Highways with regard to such city streets so designated, the Bureau of Highways may:

> maintain and repair, construct or reconstruct under its control and supervision such city streets so designated by the commissioner of highways and make such appropriations and expenditures out of its fund for such purposes. The bureau may enter into any and all contracts inclusive of agreements with cities and with any federal agencies authorized so to do for such purpose.

KRS 177.043.

■ The record in this action contains no evidence to the effect that the Commissioner of Highways either prepared a record of designation or furnished Grand Rivers with a statement of designation as required with regard to the right of way on Commerce Avenue. KRS 177.042. Without evidence of a valid exercise of the Commissioner's discretionary power of designation, it may not be said that the State has legally assumed any responsibility with regard to the maintenance and repair of Commerce Avenue. A prerequisite to the assumption of such responsibility by the State is that Commerce Avenue receive such designation. KRS 177.043.

The deed between Grand Rivers and the State merely evidences an intent that the right of way become a part of the state primary road system in compliance with KRS 177.021. In the deed, it is stated that:

> WHEREAS, under and by virtue of the statutes made and provided all right of way in any street, or portion thereof, owned by a municipality and which becomes a part of the State Highway System must be deeded to the Commonwealth, for the use and benefit of the Department of Highways, now therefore, . . .

Nowhere does the language of the deed contain any operative statement that, in fact, the right of way extending east and west on Commerce Avenue is designated as a part of the state primary road system. The ordinance passed by the City Council of Grand Rivers makes no reference to designation of the street, and the contract between the Department and Grand Rivers does not refer to any designation by the Commissioner. The general rule is that "contracts of public bodies, like those of individuals, are made with reference to existing statutes and that statutory provisions enter into the contracts by operation of the law." *Moore v. Babb*, 343 S.W.2d 373, 376 (Ky.1961). Accordingly, summary judgment is not appropriate in favor of Grand Rivers on this issue since there is no positive evidence of record indicating that a necessary prerequisite to the State assuming the responsibility of maintaining the right of way on Commerce Avenue was met.

Having given due consideration to the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits of record, concerning this matter and for the reasons stated above,

IT IS HEREBY ORDERED that the motion by Grand Rivers for summary judgment in its favor is DENIED.