Robert Gregory GROGAN, Co-Administrator of Estate of Donnie Clyde Grogan, Deceased, et al., Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Robert Gregory GROGAN, Co-Administrator of Estate of Donnie Clyde Grogan, Deceased, et al., Appellants,

v.

CITY OF SOUTHGATE, Kentucky, Appellee.

Supreme Court of Kentucky.

Jan. 16, 1979.

Rehearing Denied Feb. 27, 1979.

William O. Bertelsman, Bertelsman & Bertelsman, Newport, G. Wayne Bridges, Covington, for appellants.

A. J. Jolly, Jolly, Johnson, Blau & Parry, Newport, Robert F. Stephens, Atty. Gen., Victor Fox, Asst. Atty. Gen., Frankfort, for appellees.

PER CURIAM.

On May 28, 1977, a fire at the Beverly Hills Supper Club in the City of Southgate, Kentucky, resulted in a great number of deaths and personal injuries. Shortly thereafter numerous injured parties and personal representatives of those who had lost their lives filed damage suits in the Campbell Circuit Court. In all of these actions, which in due course were consolidated, the City of Southgate and the Commonwealth of Kentucky were named as defendants. The plaintiffs now appeal from separate judgments dismissing the actions, on the pleadings, as to the city and the Commonwealth. Each of the two appeals is submitted on an agreed statement under CR 75.15 and has been briefed and argued accordingly.

We shall discuss the city case first, because its resolution disposes of the Commonwealth case without requiring consideration of the sovereign-immunity question.

■ It was settled in *Haney v. City of Lexington*, Ky., 386 S.W.2d 738, 742 (1964), that the doctrine of sovereign immunity no longer protects municipal corporations in this state from tort liability. Later, however, in *City of Louisville v. Louisville Seed Company*, Ky., 433 S.W.2d 638 (1968), it was made clear that cities are different creatures from natural persons, private corporations, and other suable entities, and that the fundamental bases for tort liability are not necessarily the same for all of them in all situations.

■ As observed in *Frankfort Variety, Inc. v. City of Frankfort*, Ky., 552 S.W.2d 653, 655 (1977), our most recent opinion on the subject, "a city's relationship to individuals and to the public is not the same as if the city itself were a private individual or corporation, and its duties are not the same. When it undertakes measures for the protection of its citizens, it is not to be held to the same standards of performance that would be required of a professional organization hired to do the job. If it were, it very well might hesitate to undertake them. . . . A city cannot be held liable for its omission to do all the things that could or should have been done in an effort to protect life and property."

Broadly speaking, the theory on which the city's liability is premised is that it failed to enforce laws and regulations, including its own, establishing safety standards for the construction and use of buildings within its corporate limits, and that its failures in this respect were a substantial factor in causing the tragedy. In other words, the charge is that the city did not enforce a law or laws designed for the safety of the public and that its taxpayers must therefore bear a loss occasioned by someone else's failure to comply with the law.

■ Though appellants indulge the facile assumption that under similar circumstances a private individual would be liable at common law, we do not believe that the common law, as applied to individuals, offers any reasonably comparable analogy. There is, of course, the familiar principle that one who undertakes the care of another, or of his property, even though it be voluntary and without consideration, owes him the duty of reasonable care. But in the enactment of laws designed for the public safety a governmental unit does not undertake to perform the task; it attempts only to compel others to do it, and as one of the means of enforcing that purpose it may direct its officers and employes to perform an inspection function. The failure of its officers and employes to perform that function "does not constitute a tort committed against an individual who may incidentally suffer injury or damage, in common with others, by reason of such default." *City of Russellville v. Greer*, Ky., 440 S.W.2d 269, 271 (1969).

The law that applies to this case has been carefully considered, clearly enunciated, and firmly settled in *City of Louisville v. Louisville Seed Company*, Ky., 433 S.W.2d 638 (1968); *City of Russellville v. Greer*, Ky., 440 S.W.2d 269, 271 (1969); and *Frankfort Variety, Inc. v. City of Frankfort*, Ky., 552 S.W.2d 653, 655 (1977). These precedents do not restore the doctrine of sovereign immunity, nor do they evince a retreat toward it. *Haney v. City of Lexington*, Ky., 386 S.W.2d 738, 742 (1964), erased the arbitrary distinction between governmental and proprietary activities, thus extending a city's exposure to tort liability into the realm of "governmental functions," but it did not purport to create new torts. As it happens, the existence of the sovereign-immunity doctrine served to prevent a normal development of common-law tort principles in the field of municipal liability until recent times, and the subject cannot reasonably be covered by fitting it out with a ready-made suit of clothes borrowed from the law of torts as it applies to individuals and private corporations. They simply are not the same animals.

In *Modlin v. City of Miami Beach*, Fla., 201 So.2d 70 (1967), a shopper in a retail store was killed when an overhead storage mezzanine collapsed upon her. In a wrongful-death suit against the city in which the store was located the complaint alleged

negligent inspection by the city during construction of the building. Conceding that the residue of municipal immunity theretofore retained in an earlier opinion did not apply, a divided court nevertheless held that there was no tort liability: "It is a well recognized principle of tort law that a fundamental element of actionable negligence is the existence of a duty owed by the person charged with negligence to the person injured. . . . However, there is also a doctrine of respectable lineage and compelling logic that holds that this duty must be something more than the duty that a public officer owes to the public generally. . . . It is evident that under this principle the respondent city's inspector would not have been personally liable . . . Therefore, the city is not liable under the rule of respondeat superior." *Id.*, at 201 So.2d 75, 76.

We cite this line of reasoning by the Florida court not because we find it a satisfactory answer, but in order to illustrate that even by resort to common-law logic the appellants have no case against the city. We acknowledge, however, that a legal problem of this magnitude should not be resolved by the tricks of mechanical logic. The answer must find its source in conscious public policy, and the fundamental policy-viewpoint on which this court has settled during the 15 years since *Haney v. City of Lexington*, Ky., 386 S.W.2d 738 (1964), is that a government ought to be free to enact laws for the public protection without thereby exposing its supporting taxpayers (including, of course, those yet unborn) to liability for failures of omission in its attempt to enforce them. It is better to have such laws, even haphazardly enforced, than not to have them at all.

What we have said thus far with regard to the city's responsibility applies with equal force to the Commonwealth. There being no basis for tort liability, the question of governmental immunity becomes irrelevant. The answer to the argument that federal constitutional rights are violated by any result that has the effect of shielding governmental bodies from liability that would attach except for their status is that the principles articulated in our previous cases and applied here do not have that effect. To the contrary, that status would be the only basis *for* holding a city or state liable, because only a governmental entity possesses the authority to enact and enforce laws for the protection of the public. Hence it is that in delineating the areas and extent of public responsibility we are dealing with a subject quite apart and different from the world of individual and corporate relationships. There being no reasonable basis for comparison, there can be no discrimination.

The judgments are affirmed.

All concur.