770 P.2d 384

**Daniel G. DAGGETT,**
**Plaintiff–Appellant,**

v.

**COUNTY OF MARICOPA, a body politic, Defendant–Appellee.**

**No. 1 CA–CIV 9622.**

Court of Appeals of Arizona,
Division 1, Department A.

Jan. 17, 1989.

Review Denied April 11, 1989.

Harris & Palumbo, P.C. by John David Harris and Kevin W. Keenan, Phoenix, for plaintiff-appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Scott E. Boehm and David M. Bell, Phoenix, for defendant-appellee.

## OPINION

HAIRE, Presiding Judge.

Daniel G. Daggett has appealed from a judgment dismissing his negligence claim against Maricopa County for failure to state a claim upon which relief can be granted. The appeal requires us to determine whether, under the pleadings, it could be held that Maricopa County owed Daggett a duty of care upon which negligence liability could be founded.

## FACTS AND PROCEDURAL HISTORY

In reviewing a dismissal for failure to state a claim, we must assume that all allegations in the second amended complaint are true. *See Parks v. Macro–Dynamics, Inc.,* 121 Ariz. 517, 591 P.2d 1005 (App.1979). The facts as stated in the second amended complaint, together with the admissions made in the motion to dismiss and response, are as follows:

The accident leading to this litigation occurred at "Big Surf," a privately owned water amusement park in Tempe, Arizona. One of the recreational facilities at Big Surf is a water slide named the "Rampage Ride." On the Rampage Ride, a customer climbs a 28–foot tower and slides on a raft down into a swimming pool. Although the pool is only about 32 inches deep, the bottom of the pool is painted a uniform shade of blue and appears to be of sufficient depth for diving. At the time of the accident, the pool did not have any depth markers above or below the water line, nor were there any signs or instructions posted around the pool advising patrons of the pool's depth or suitability for diving.

Big Surf employees permitted Daggett to ride the Rampage Ride wearing thong style sandals and carrying money in his mouth. When Daggett's raft hit the water, he dropped a thong and his money into the pool. After Daggett climbed out of the pool, he was told to retrieve his belongings. Daggett was unaware of the pool's shallowness and dove back into the pool. He hit his head on the bottom and suffered serious permanent injuries as a result of the impact.

At all times material to this litigation, state and county regulations required the Maricopa County Health Department to review and approve construction plans for public and semi-public bathing facilities. Employees of the Maricopa County Health Department were similarly required to inspect public and semi-public pools to enforce these same regulations.[1] The county

---

1. A.C.R.R. R9–8–852 provided:
    "Inspections of public and semi-public bathing places shall be made by representatives of the State or County Health Departments to determine that installed facilities and operational procedures comply with these Regulations. Should the Department, after inspection of a bathing place, find that an extreme

approved the construction plans for the Rampage Ride prior to its construction. At various times prior to the accident, employees of Maricopa County Health Department conducted inspections as required by county regulations.

Daggett filed this action against Desert Oceans, Inc., Wavetek, and Safari Pools, Inc. (the Big Surf defendants) alleging that the negligence of these defendants was the proximate cause of his injuries. He subsequently filed a second amended complaint to add Maricopa County as a defendant. The amended complaint alleged that Maricopa County

> "improperly approved of the installation of the pool in question and/or made inadequate and improper inspections and/or failed to disclose the improper depth of the pool and/or failed to advise of inadequate and improper safety conditions, i.e., absence of depth markers, absence of proper warnings, signings, instructions, and the like."

The county filed a combined motion to dismiss/motion for summary judgment. The county argued that it was not required to control the conduct of the Big Surf defendants to prevent injury to Daggett because it had no special relationship with him, and thus owed no duty to Daggett. The county additionally argued that its inspection program did not create a duty to Daggett, and that it therefore could not be liable for failure to inspect or for negligent inspection. The trial court granted the county's motion to dismiss and entered judgment in favor of Maricopa County in accordance with its ruling.[2] This timely appeal followed.

Daggett argues on appeal that state and county regulations governing the construction and inspection of swimming pools created an enforceable duty owed to him by the county. In the alternative, Daggett argues that the county voluntarily assumed a responsibility necessary for his protection by choosing to inspect swimming pools, and is therefore liable for its failure to act reasonably in the exercise of that responsibility. This latter argument is based on Sections 323 and 324A of the Restatement (Second) of Torts. We conclude that Maricopa County created a relationship with Daggett by enacting regulations that required it to approve and inspect swimming pools. The county therefore owed a duty to Daggett to act reasonably in the exercise of these functions. *See Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 706 P.2d 364 (1985). Daggett's second amended complaint thus was sufficient to state a claim upon which relief could be granted and the dismissal was in error.[3]

### *Duty Imposed by Regulations*

We first consider Daggett's claim for relief based on the theory that the state

safety or health hazard exists, they may order the immediate suspension of the operation of the establishment. Such suspension of operation shall continue until, in the opinion of the Department, the hazard has ceased to exist. The Department may suspend operation for repeated or continued violation of any of the Department's Rules and Regulations."
Chapter VI, § 1, Regulation 2(a) of the Maricopa County Health Code provided:
"No bathing place shall be constructed, nor shall any bathing place now or hereafter existing be materially altered or enlarged before complete plans and specifications, together with such further information as the Department may require, shall have been submitted to and received the written approval of the Department."
Chapter VI, § 6, Regulation 1(c) provided in part:
"Water depth shall be conspicuously and permanently marked on the walls of the pool and shall be visible in or out of the water. Mark-

ings are required at 1–foot depth intervals to a depth of 5–feet, and at the deepest point. Thereafter markings shall be located in accordance with the design of the pool for maximum protection of bathers. Depth markers shall be in numerals of 4 inch minimum height and of a uniform color on a background of contrasting uniform color...."

**2.** The trial court struck the county's motion for summary judgment because the county filed the motion less than 60 days before the date set for trial, in violation of Maricopa County Local Rule 3.2(g)(2).

**3.** Daggett's amended complaint also alleged that the county was negligent in permitting Big Surf to serve alcoholic beverages to minors, including Daggett. This claim was dismissed for failure to state a claim upon which relief could be granted. Daggett has not appealed the dismissal, and our opinion here does not affect the trial court's disposition of that allegation.

and county inspection regulations themselves imposed a duty on the county to exercise reasonable care for the protection of Daggett and others like him. The county argues that these regulations do not impose any such duty because the county has no duty to control the actions of those it regulates. In making this argument, the county relies on Restatement (Second) of Torts § 315:

> "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> "(b) a special relation exists between the actor and the other which gives the other a right to protection."

The "special relations" to which subsections (a) and (b) refer are set forth in §§ 314A and 316–320 of the Restatement.[4] Because none of the special relationships described in these sections existed between the county and Daggett, the county argues that it had no duty to exercise reasonable care to control the conduct of Big Surf so as to prevent injury to Daggett.

In our view, the county's reliance on Restatement § 315 is misplaced. At most, section 315 establishes that the county owed Daggett no duty of care under the common law. However, Daggett's claim for relief is not based on common law. He argues instead that the county's duty was created by regulations that require county employees to approve and inspect Big

Surf's facilities for compliance with safety requirements.

The cases cited and discussed by the county in support of its argument do not support its position. Neither *Cooke v. Berlin*, 153 Ariz. 220, 735 P.2d 830 (App.1987), nor *Hamman v. County of Maricopa*, 161 Ariz. 53, 775 P.2d 1117 (App.1987) (review granted March 24, 1987) nor *Davis v. Mangelsdorf*, 138 Ariz. 207, 673 P.2d 951 (App. 1983) discussed whether government regulations created a duty owed to a member of the public.[5] While *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801 (Minn.1979) and *Grogan v. Commonwealth*, 577 S.W. 2d 4 (Ky.) *cert. denied* 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979) considered the effect of government inspection regulations on the existence of a duty, neither court concluded that section 315 would always preclude recovery by an individual plaintiff. Rather, *Cracraft* and *Grogan* held only that the particular regulations in question merely created a duty to the general public, and not to the individual plaintiffs. *Grogan*, 577 S.W.2d at 6; *Cracraft*, 279 N.W.2d at 805; *see also Juliano v. State of Ohio Department of Health*, 18 Ohio St.3d 303, 480 N.E.2d 817 (1985) (swimming pool safety inspection regulations imposed only "public" duty on health department).

The Arizona courts formerly followed similar reasoning and distinguished between a public duty and a private duty in safety inspection cases. *See, e.g., Besserman v. Town of Paradise Valley*, 116 Ariz. 471, 569 P.2d 1369 (App.1977); *Duran v. City of Tucson*, 20 Ariz.App. 22, 509 P.2d 1059 (1973); *Ivicevic v. City of Glendale*,

---

4. The special relationships identified in the Restatement (Second) are: (1) the duty of common carriers, innkeepers, possessors of land open to the public, and those with custody of others to protect third persons (§ 314A); (2) the duty of a parent to control his child (§ 316); (3) the duty of a master to control his servant (§ 317); (4) the duty of a possessor of land or chattels to control the conduct of licensees (§ 318); (5) the duty of those in charge of persons with dangerous propensities (§ 319); (6) the duty of those with custody of another to control third persons (§ 320).

5. We also observe that, contrary to the county's assertion, neither *Cooke, Hamman,* nor *Davis* specifically holds that the only "special relations" that will support the existence of a duty to control the conduct of a third person under Restatement § 315 are those set forth in §§ 314A and 316–320. The *Cooke* court commented that the enumerated special relationships all share a common characteristic of the actor's ability and obligation to control the conduct of a third party. *Cooke,* 153 Ariz. at 224, 735 P.2d at 834. Presumably, other relationships with these identical characteristics would be governed by § 315.

26 Ariz.App. 460, 549 P.2d 240 (1976). These decisions, however, rested on *Massengill v. Yuma County*, 104 Ariz. 518, 456 P.2d 376, 41 A.L.R.3d 692 (1969), which was overruled in *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597, 38 A.L.R.4th 1188 (1982) by our supreme court.[6] In *Ryan*, the court stated:

> "We shall no longer engage in the speculative exercise of determining whether the tort-feasor has a general duty to the injured party, which spells no recovery, or if he had a specific individual duty which means recovery. [Citations omitted.] Thus, the parameters of duty owed by the state will ordinarily be coextensive with those owed by others." *Ryan*, 134 Ariz. at 310, 656 P.2d at 599.

Maricopa County does not dispute that state and county regulations required it to approve and inspect swimming facilities like those at Big Surf for safety and health hazards. Moreover, it is also plain that neither Restatement § 315 nor the public-private duty distinction discarded in *Ryan* can provide any support for the county's contention that it owed no enforceable duty of care to Daggett. Indeed, *Ryan* supports the contrary proposition—that Maricopa County has a duty to Daggett, and that the county's actions should be judged by the same standard of care applicable to private defendants.

Division 2 of this court has twice relied on *Ryan* and permitted negligent inspection claims to proceed against governmental entities. In *Bischofshausen v. Pinal–Gila Counties Air Quality Control District*, 138 Ariz. 109, 673 P.2d 307 (App. 1983), the plaintiffs sued the City of Globe and the regional air quality control district for damages resulting from asbestos pollution. The plaintiffs alleged that the city had issued a building permit contrary to the requirements of its ordinances, and that the air quality control district had a statutory duty to control and regulate asbestos mine and mill operators. The defendants moved for dismissal on the theory

that any duty they owed to the plaintiffs was a duty owed to the general public, and that under *Massengill* no claim for relief could be recognized. On appeal, Division 2 noted that *Ryan* had overruled *Massengill* and "abrogated the doctrine of public vs. private duty as being determinative of the issue of governmental immunity." *Id.* at 110, 673 P.2d at 308. The court held that the plaintiffs had stated a claim in negligence against both the city and the district. Similarly, in *Brown v. Syson*, 135 Ariz. 567, 663 P.2d 251 (App.1983), the plaintiffs alleged that the defendant, a city building inspector, had negligently inspected the plaintiffs' residence during its construction, and that as a result the residence was constructed in violation of the city building and housing codes. Division 2 reversed summary judgment for the defendant, noting that *Ryan* had overruled the "doctrine of immunity" expressed in *Massengill*. *Id.* at 568, 663 P.2d at 252.

Maricopa County seizes on Division 2's references to the doctrine of sovereign immunity in connection with *Massengill*, and urges that *Brown* and *Bischofshausen* both turned on the abolition of that doctrine and not on the question of duty. The county states:

> "All that *Brown* teaches ... is that *Ryan* did away with governmental immunity. As has been emphasized throughout this answering brief, that is not in question here."

In our opinion, this statement is too restrictive. *Ryan* did not abolish sovereign immunity; sovereign immunity was abolished long before *Ryan* in *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963). Despite the loose references in *Brown* and *Bischofshausen* to the *Massengill* "doctrine of immunity," it is quite clear that Division 2 allowed the claims of the *Brown* and *Bischofshausen* plaintiffs to proceed because, with the elimination of the *Massengill* public-private duty distinction, there was no longer any legal basis for holding that the defendants

---

6. The court in *Cracraft v. City of St. Louis Park* cited *Massengill* in support of its holding. 279 N.W.2d at 806, n. 7.

owed no duty of care to the plaintiffs.[7] *Brown* and *Bischofshausen* both inferentially recognize that, in the wake of *Ryan,* negligence by a governmental entity in performing inspections required by statute or regulation will support a claim by persons injured as a result of the entity's negligence. Daggett's second amended complaint alleged such a duty, a breach of the duty, and an injury as a result of the breach. His complaint was thus sufficient to state a claim upon which relief may be granted.[8]

### Sections 323 and 324A of the Restatement

■ In light of our conclusion, we do not need to decide Daggett's alternative argument that, by choosing to inspect the Rampage Ride, the county might have assumed a duty to protect Daggett and others like him. However, in view of the probability of further trial proceedings in this matter, we note that the allegations of Daggett's second amended complaint are insufficient to support a claim under either Section 323 or Section 324A of the Restatement (Second) of Torts.

Section 323 of the Restatement (Second) of Torts provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, or

"(b) the harm is suffered because of the other's reliance on the undertaking."[9]

Section 324A provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or third person upon the undertaking."

Arizona courts have applied both §§ 323 and 324A to analyze the liability of volunteers who affirmatively undertake action when they have no duty to do so. *See Barnum v. Rural Fire Protection Compa-*

---

7. Division 2's references to immunity in both *Brown* and *Bischofshausen* are likely directed towards the discussion in *Ryan,* that states in some instances, even where a statute or regulation creates a duty on the part of the governmental entity, the entity will be protected by legislative or judicial immunity. *See Ryan,* 134 Ariz. at 310–11, 656 P.2d at 599–600; *Bischofshausen,* 138 Ariz. at 110–11; 673 P.2d at 308–09.

8. The county also argues that this court should be guided in its analysis by A.R.S. § 12–820.01 and A.R.S. § 12–820.02, enacted in 1984. We point out to the county that the legislature expressly stated that

"... The provisions of [A.R.S. §§ 12–820.01 and 12–820.02] which modify existing law apply to causes of action which arise *after* the effective date of this act. The provisions of this act which confirm existing law apply to causes of action arising before the effective date of this act." Laws, 1984 Ch. 285 § 1(B) (emphasis added).

It is thus clear that the legislature did not intend for the act to have retroactive effect in those areas where it modified existing law. This case is thus governed by the principles announced in *Ryan. See Cheney v. Arizona Superior Court for Maricopa County,* 144 Ariz. 446, 698 P.2d 691 (1985).

9. We reject the county's argument that Daggett waived any argument under § 323 because he failed to raise it in the trial court. It is true that Daggett's response to the county's motion to dismiss focused on 324A and did not discuss § 323. It is also true, however, that §§ 323 and 324A are conceptually related, and Daggett's analysis in the trial court did not purport to rely on § 324A exclusively. Further, the county itself cited and discussed § 323 in its reply to its motion to dismiss. In our opinion, Daggett adequately raised the general principles underlying both §§ 323 and 324A in the trial court and may legitimately urge § 323 on appeal.

*ny*, 24 Ariz.App. 233, 537 P.2d 618 (1975) (analyzing the liability of a for-profit corporation to its subscribers under § 323); *Papastathis v. Beall*, 150 Ariz. 279, 723 P.2d 97 (1986) (analyzing the liability of a store owner to a customer under § 324A). However, we have not had occasion to decide whether Sections 323 and 324A are applicable when the government conducts routine inspections pursuant to statutory or regulatory authority.[10]

Assuming, without deciding, that Sections 323 and 324A of the Restatement (Second) of Torts apply to government inspection programs, the allegations of Daggett's second amended complaint are insufficient to state a claim for relief under either section. Both sections impose liability for failure to exercise reasonable care only under certain enumerated circumstances, none of which is alleged in Daggett's complaint. First, the complaint does not contain any allegation that the negligent inspections increased the risk of harm to Daggett, as required by §§ 323(a) and 324A(a). At best, the complaint alleges that the county failed to discover or correct a continuing risk inherent in the design and construction of the premises. Second, there is no allegation that the county's regulatory inspections constituted an undertaking to perform Big Surf's own duty to comply with the county's regulations, as required by § 324A(b). Finally, there is no allegation that Daggett suffered harm because either he or Big Surf was relying on the efficacy of the county's inspections, as required by § 323(b) or § 324A(c). *See Tillman v. Travelers Indemnity Co.*, 506 F.2d 917 (5th Cir.1975); *Raymer v. United States*, 660 F.2d 1136 (6th Cir.1981) *cert. denied* 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982). Daggett's allegations are therefore insufficient to state a claim for relief under either section 323 or 324A of the Restatement (Second) of Torts.

Reversed and remanded for proceedings consistent with this opinion.

SHELLEY and GERBER, JJ., concur.

---

**10.** The courts in those jurisdictions that have considered this question have come to varying conclusions. Some courts have held that government employees who conduct safety inspections as required by statute or regulation do not undertake "to render services to another ..." within the meaning of §§ 323 and 324A; such inspections are services rendered to the government, and not to the person inspected or third persons. *See e.g., Grogan v. Commonwealth of Kentucky*, 577 S.W.2d 4 (Ky.), *cert. denied* 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979) (government inspections intended to ensure compliance with regulations and not for protection of third parties); *McCreary v. United States*, 488 F.Supp. 538 (W.D.Pa.1978) (sections 323 and 324A require services to be rendered directly to the person harmed or causing harm rendered); *Mercer v. United States*, 460 F.Supp.

329 (S.D.Ohio 1978). Similarly, courts in jurisdictions that adhere to the "public duty"—"private duty" distinction find that Sections 323 and 324 do not apply to an individual unless the government owes a duty to the plaintiff in particular, rather than the public in general. *See, e.g., Taylor v. Stevens County*, 111 Wash.2d 159, 759 P.2d 447 (1988) (claim for negligent building inspection). Finally, at least one court has held that inspections made by government employees pursuant to law or regulation are "services rendered to another" within the meaning of Sections 323 and 324A. *See Adams v. State*, 555 P.2d 235 (Alaska 1976); *cf. Zabala Clemente v. United States*, 567 F.2d 1140 (1st Cir.1977), *cert. denied* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978) (under Puerto Rican law, directive that is neither a regulation or a statute does not create legal duty).