SIDING SALES, INC., Lynn Osborne, and, Pamela K. Osborne, Appellants,

v.

WARREN COUNTY WATER DISTRICT and City of Bowling Green, Kentucky, Appellees.

No. 1997–CA–002084–MR.

Court of Appeals of Kentucky.

Dec. 30, 1998.

Stephen B. Catron, Bowling Green, Kentucky, for Appellants.

Dennis Gaines Penn, Bowling Green, Kentucky, for Warren County Water District.

Patrick J. Murphy, Lexington, Kentucky, for City of Bowling Green, Kentucky.

Before BUCKINGHAM, HUDDLESTON, and KNOX, Judges.

## OPINION

KNOX, Judge.

Appellants, Siding Sales, Inc., and its principal owners, Lynn and Pamela Osborne, appeal from an order of the Warren Circuit Court granting summary judgment in favor of appellees. We affirm.

Appellants, Lynn and Pamela Osborne (the Osbornes), own commercial property located in the city of Bowling Green, Kentucky (City). The Osbornes' property is leased to appellant, Siding Sales, Inc. (Siding Sales), a supplier of vinyl siding and other construction materials. The road on which the property fronts constitutes the city/county boundary line. While the Osbornes' property is located within the city limits, the water mains which service the property are located in the county. Thus, appellee, Warren County Water District (Water District), is responsible for providing water to the property.

On April 2, 1994, the building located on the property owned by the Osbornes and leased to Siding Sales was totally and completely destroyed by fire. Deposition testimony from the local arson investigator, Richard Story, indicates the fire was started deliberately by persons unknown. Subsequently, the City issued appellants a build-

ing permit for the purpose of constructing a replacement building on the property, conditioned upon provision by the Water District of a water supply sufficient to protect appellants' property. Appellants completed the new building and applied for an occupancy permit.

Meanwhile, the City asked the Water District to increase the water supply available to the Osbornes' property. Ultimately, the City and the Water District split the cost of a project which enlarged the water line servicing the property and extended the Water District's system to a new connection point with its supplier, Bowling Green Municipal Utilities. The water line project took several months to complete, during which period the City refused to issue an occupancy permit to the Osbornes. Ultimately, the project was completed in October 1994, the permit was issued, and Siding Sales resumed normal operation.

Prior to completion of the project, however, in August 1994, appellants sued the City and the Water District,[1] alleging negligence on their part. Specifically, they alleged the water pressure (and, thus, the rate of flow in the water lines) was insufficient to assist firefighters in their efforts to save Siding Sales' building, thereby causing its total destruction. Additionally, appellants' complaint set forth a "Atakings" claim, alleging the City and the Water District caused an unnecessary delay in Siding Sales' ability to resume normal operation, resulting in a taking of appellants' private property without just compensation, in violation of the United States and Kentucky Constitutions. Appellants demanded compensatory as well as punitive damages on their negligence claims, and lost profits on their takings claims.

The Warren Circuit Court granted summary judgment in favor of appellees on all claims. Specifically, as concerns appellants' claims of negligence, the trial court found the City to be exempt from liability under the municipal immunity provisions of KRS 65.2003. It appears the court based its sum-

---

1. Appellants also sued Bowling Green Municipal Utilities, which was subsequently dismissed from the action and is not a party to this appeal.

mary judgment in favor of the Water District upon the same premise, i.e. immunity. Addressing appellants' "takings" claims against both appellees, the trial court found no taking to have occurred, the acts of appellees having constituted "valid exercises of the State's police power." Further, the court found that even if a taking of appellants' property had occurred, the lost profits claimed by appellants are not a proper measure of damages in takings cases. Thus, in any event, the court determined, appellants cannot establish damages on that claim. Appellants have appealed the issue of immunity as well as the constitutional "takings" issue.

*IMMUNITY*

Appellants argue the City negligently: (1) failed to enforce local fire protection standards during the process of plat approval; (2) issued a building permit allowing construction of the original building with knowledge the lot did not comply with local fire protection safety standards; and, (3) denied appellants an occupancy permit pending expansion of the water mains servicing appellants' property. Appellants maintain the City's actions constituted its "ministerial" duties and that under both statutory law and case law, the City is not exempt from liability for negligence "arising out of acts or omissions of its employees in carrying out their ministerial duties." KRS 65.2003(3)(e).

KRS 65.200–65.2006 constitutes the Claims Against Local Governments Act. Specifically, KRS 65.2003(3) exempts a "local government" (i.e. a city) from liability for injuries or losses resulting from:

Any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority or others, exercise of judgment or discretion vested in the local government, which shall include by example, but not be limited to:

(a) The adoption or failure to adopt any ordinance, resolution, order, regulation, or rule;

(b) The failure to enforce any law;

(c) The issuance, denial, suspension, revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization;

(d) The exercise of discretion when in the face of competing demands, the local government determines whether and how to utilize or apply existing resources; or

(e) Failure to make an inspection.

Nothing contained in this subsection shall be construed to exempt a local government from liability for negligence arising out of acts or omissions of its employees in carrying out their ministerial duties.

■ Appellants maintain the rate of flow in their water lines prior to the fire violated the City's fire protection safety standards. It is not clear from the evidence in the record whether the City's ordinances even apply in this matter since it is the county which is responsible for provision of water to appellants' property, nor is it clear that the rate of flow in the water mains servicing appellants' property was below that which the City's ordinances mandate. Nonetheless, appellants essentially allege the City failed to enforce local regulatory law establishing fire safety standards and as such, we believe the City is exempt from liability, under the authority of KRS 65.2003(3)(b), "[t]he failure to enforce any law."

■ Further, while appellants' complaint charges the City with having caused appellants' injury, we believe appellants' allegations are more properly interpreted to constitute charges that the City failed to prevent their injury by providing insufficient water to fight a fire set by an arsonist. Such a distinction is significant in this case, and is similar to that made in *Gas Serv. Co. v. City of London,* Ky., 687 S.W.2d 144 (1985), wherein it was alleged the city negligently installed the local sewer system by placing it too close to existing gas lines, and then failed to properly repair it, causing a natural gas explosion which destroyed some buildings and damaged others. The Court distinguished the allegations before it, i.e. that affirmative action taken by the city had actually caused plaintiff's damages, from those in *Grogan v. Commonwealth,* Ky., 577 S.W.2d 4 (1979), in which the city was charged with negligent failure to enforce local construction safety laws and regulations, thus failing to prevent a tragic fire at the Beverly Hills

Supper Club in Southgate, Kentucky. The city, in *Grogan*, was found to be exempt from such liability:

> As observed in *Frankfort Variety, Inc. v. City of Frankfort*, Ky., 552 S.W.2d 653, 655 (1977), our most recent opinion on the subject, "a city's relationship to individuals and to the public is not the same as if the city itself were a private individual or corporation, and its duties are not the same. When it undertakes measures for the protection of its citizens, it is not to be held to the same standards of performance that would be required of a professional organization hired to do the job. If it were, it very well might hesitate to undertake them.... A city cannot be held liable for its omission to do all the things that could or should have been done in an effort to protect life and property."

*Grogan*, 577 S.W.2d at 5.

The Court in *Gas Service Co.* noted that under the facts of *Grogan*, "the government was not charged with having caused the injury, but only with having failed to prevent it by proper exercise of regulatory functions which have elements appearing quasi-judicial and quasi-legislative in nature." *Gas Serv. Co.*, 687 S.W.2d at 149. In a later case, our Supreme Court addressed allegations that the city of Covington negligently failed to take proper regulatory steps to shut down a building which violated fire and safety codes. *Bolden v. City of Covington*, Ky., 803 S.W.2d 577 (1991). The plaintiffs charged the city's failure to enforce its safety regulations ultimately caused a fire in that building, set by an arsonist, to spread next door to the plaintiff's building. The Court found the city to be exempt from liability under the circumstances:

> Tort liability does not extend to "cases where the 'government takes upon itself a regulatory function,' [*Com., Dept. of Banking & Securities v.*] *Brown*, [Ky.,] *supra* [605 S.W.2d 497] at 498 [1980], which is different from any performed by private persons or in private industry, and where, if it were held liable for failing to perform that function, it would be a new kind of tort liability." *Gas Service, supra*, 687 S.W.2d at 149.

*Id.* at 581. In the present case, we believe the City's role was regulatory in nature, as was the case in *Bolden*. As such, we agree with the trial court that the City is exempt from liability under these circumstances.

■ The City's refusal to issue an occupancy permit for appellants' new building, pending expansion of the water lines serving appellants' property, constituted not only regulatory action on the City's part, but also discretionary action, given its imposition of conditional occupancy dependent upon a sufficient water supply. We believe these circumstances fall under KRS 65.2003(3)(c) and, as such, the City is exempt from liability for negligence in this case.

Appellants allege the Water District negligently: (1) placed its stamp on the subdivision plat creating appellants' lot; (2) failed to provide sufficient water to assist firefighters; and, (3) failed to make capital improvements to its system in a timely manner, delaying Siding Sales' ability to resume normal operation. The Water District maintains it is exempt from liability for these alleged acts of negligence under the theories of both sovereign immunity and statutory immunity. We find it to be exempt under statutory authority.

■ The Water District is a special district created by the Warren County Fiscal Court pursuant to KRS Chapter 74 (Water Districts), in accordance with the procedures set forth in KRS 65.805–65.830 (creation of a nontaxing special district). As such, it is a "local government" under the Claims Against Local Governments Act, KRS 65.200–65.2006, defined as "any city incorporated under the law of this Commonwealth, the offices and agencies thereof, *any county government or fiscal court, any special district ... created or controlled by a local government.*" KRS 65.200(3). (Emphasis added). For the same reasoning we have set forth above supporting the City's exemption from liability for alleged acts of negligence, we find the Water District to be exempt from such liability.

■ Further, as concerns the water line expansion project, undertaken after destruction of appellants' original building, appellants do not allege negligence in the actual

construction of the project, nor do they allege the project failed to increase the water supply to an adequate level. Essentially, they challenge the Water District's exercise of discretion in determining how to best use its limited resources to upgrade the water supply. However, under KRS 65.2003(3)(d), we believe the Water District is exempt from liability in the face of such allegations.

The purpose of summary judgment is "to expedite the disposition of cases and avoid unnecessary trials when no genuine issues of material fact are raised...." *Steelvest, Inc., v. Scansteel Serv. Ctr.*, Ky., 807 S.W.2d 476, 480 (1991). It should be used only when, as a matter of law, "it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Id.* Given the status of both the City and the Water District as "local governments" under the Claims Against Local Governments Act, and given the provisions of KRS 65.2003 as well as case law addressing the question, we believe the trial court correctly determined appellees to be exempt from liability for negligence under the circumstances, and correctly granted summary judgment in favor of appellees.

*TAKINGS CLAIM*

Appellants allege the City's refusal to issue an occupancy permit for the replacement building constructed on the property following the fire, and the Water District's completion of the water line construction project in an untimely manner, delayed Siding Sales' ability to resume normal operation for a period of several months. This delay, they claim, resulted in a taking of their property without just compensation. Appellants' property was destroyed by fire on April 2, 1994, and they completed construction of their replacement building in July 1994. Although they began using that portion of the building comprising their office space immediately thereafter, apparently, they were unable to utilize their warehouse until October or November. They claim lost profits as their damages, i.e. costs incurred in using temporary facilities and in advertising their temporary location. In disposing of appellants' takings claim, the trial court stated in its order:

A "taking" has been defined as "the entering upon private property and devoting it to public use so as to deprive the owner of all beneficial enjoyment." *Commonwealth Natural Resources and Environmental Protection Cabinet v. Stearns Coal & Lumber Co.*, Ky., 678 S.W.2d 378, 381 (1984). Whenever a "taking" occurrs [sic], the property owner is entitled to be justly compensated. *Commonwealth Dept. Of Highways v. Gisborne*, Ky.App., 391 S.W.2d 714 (1965). Given these definitions, the Court has been hard pressed to find any case law supporting the plaintiffs' claim that the defendants' actions herein constitute a taking. In fact, the holdings in *City of Louisville v. Thompson*, Ky., 339 S.W.2d 869 (1960) and *V.T.C. Lines, Inc. v. City of Harlan*, Ky., 313 S.W.2d 573 (1957), summarily refute the plaintiffs' taking claim. In those cases, the courts determined that actions similar to the defendants['] were valid exercises of the State's police power.

In addressing this issue it must be noted that the plaintiffs' claim is based solely on lost profits. However, even if the plaintiffs' allegations were true and the Water District's and City's action did constitute a taking, lost profits are not a proper measure of damages in a "takings" case. In *Commonwealth Dept. of Highways v. Siler*, Ky., 487 S.W.2d 926 (1972), the Kentucky Supreme Court made that rule very clear when it stated as follows: "If there is one thing about which there seems to be unanimity of opinion on this subject, it is that the injury to business or lost profits is not a proper element of compensation for land taking in condemnation proceedings."

We agree with the trial court's assessment of the case, and find that the regulation of the use of appellants' property under the circumstances constituted a valid exercise of police power and, therefore, did not constitute a taking of appellants' property. "The right to conduct a business is subordinate to the police power of the state reasonably exercised in the public interest." *Jasper v. Commonwealth*, Ky., 375 S.W.2d 709, 711 (1964) (citations omitted). The real question, according to the *Jasper* court, is whether appellees' acts constituted "a rea-

sonable regulation of appellants' business in the furtherance of a substantial public purpose." *Id.* We believe they did. Certainly, upgrading the provision of fire protection and water services already afforded citizens promotes their well-being and furthers the policy promulgated by the local government of ensuring those services are adequate. Denying a property owner occupancy of his building pending completion of upgraded services is a legitimate way in which to further the policy.

Although appellants would have us believe they have been unfairly singled out for such treatment, we do not believe that is the case.

The United States Supreme Court has consistently distinguished between situations in which a government physically and permanently occupies or takes title to property, or in effect destroys the claimant's rights in property, and those in which the government merely regulates the use of the property. Certainly, governments are entitled to regulate landowners' use of property, and compensation generally is required as a result of regulations

> only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out

the property owner to bear a burden that should be borne by the public as a whole.

*Natural Resources and Envtl. Protection Cabinet v. Kentucky Harlan Coal Co.*, Ky. App., 870 S.W.2d 421, 425 (1993) (citations omitted). Appellees neither physically nor permanently occupied appellants' property, nor did appellees strip appellants of any rights in their property. Appellants were able to use their building, albeit on a limited basis, immediately following completion of their replacement building. Appellees merely regulated appellants' use of their property pending the provision of upgraded water lines, and we do not find that in so doing, appellants were unfairly singled out. We believe the trial court properly granted summary judgment in favor of appellees.

For the foregoing reasons, we affirm the order of the Warren Circuit Court.

All concur.