RENDERED: SEPTEMBER 30, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0002-MR

COMMONWEALTH OF KENTUCKY,
ENERGY AND ENVIRONMENT
CABINET                                                                                   APPELLANT


APPEAL FROM BRECKINRIDGE CIRCUIT COURT
v.            HONORABLE KENNETH H. GOFF, II, JUDGE
ACTION NO. 19-CI-00237


ERIC SHRADER AND KENTUCKY
CLAIMS COMMISSION                                                       APPELLEES


OPINION
REVERSING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND DIXON, JUDGES.

DIXON, JUDGE: The Commonwealth of Kentucky, Energy and Environment

Cabinet (Cabinet) appeals from the order of the Breckinridge Circuit Court entered

on December 1, 2021, reversing and remanding the final order of the Kentucky

Claims Commission (Commission)[1] issued on October 28, 2019, dismissing Eric Shrader's claim against the Cabinet. Following review of the record, briefs, and law, we reverse.

## FACTS AND PROCEDURAL BACKGROUND

In 2015, Eric Shrader contracted a timber harvest on his property. Pursuant to 402 KAR[2] 3:030, a "logger or operator engaged in timber harvesting operations shall comply with the provisions of the silviculture section of The Kentucky Agriculture Water Quality Plan, Best Management Practices [(BMPs)], required by KRS 224.71-110 and 224.71-120." The Cabinet's Kentucky Division of Forestry (KDF) inspects timber harvests for BMP[3] compliance.

The KDF inspected Shrader's property eight times throughout the timber harvest. The final inspection was conducted by Ranger David Hurt and indicated the site was "in compliance" with BMPs. Shrader was not present during

---

[1] In 2021, the Commission was replaced by the Office of Claims and Appeals and the Kentucky Board of Claims. *See* Kentucky Revised Statutes (KRS) 12.020, KRS 13B.020, and KRS 49.010 *et seq*.

[2] Kentucky Administrative Regulations.

[3] KRS 149.330(1) defines BMPs as:

> effective, practical, economical, structural, or nonstructural methods that prevent or reduce the movement of sediment, nutrients, pesticides, and other pollutants from the land to surface or groundwater, or that otherwise protect water quality from potential adverse effects of timber harvesting operations as developed by the Division of Forestry and approved by the Agriculture Water Quality Authority[.]

the final inspection but disagreed with Ranger Hurt's determination. Consequently, Shrader contacted Cabinet agents to complain that BMP violations went uncited.

Shrader expressed concerns to the Kentucky Division of Water (DOW) that the logging might impact the groundwater quality due to storm water runoff. Over a month after the final inspection, at Shrader's request, DOW Geologist Sean Vanderhoff investigated Shrader's property but did not cite a water quality violation. About a month later, DOW Inspector Jordan Bailey examined Shrader's property, again at Shrader's request, and did not cite any water quality violation. Both Vanderhoff and Bailey issued written findings and recommendations, but neither ordered any type of remediation for the property. Vanderhoff "recommended that natural vegetation (i.e. native grasses) be planted to stabilize the soils and to provide a buffer around the sinkholes." Bailey's recommendation stated "*if* the property owner [(Shrader)] feels additional stabilization is needed, then it is advised that the use of other, less abrasive means of stabilization[,]" be utilized, such as methods without using heavy equipment which would disturb the previously employed measures. (Emphasis added.)[4]

---

[4] Bailey later testified in an affidavit that he had no grounds to cite violations because he did not have any evidence that the waters had been or were being impacted by pollution. Bailey also testified that he "considered a major re-disturbance of the site as being completely unnecessary and felt that the re-introduction of heavy equipment would do more harm than good."

Nearly a year after the final inspection, Shrader petitioned the Commission for $35,024.56 in monetary damages – including $19,575, which represented 783 hours he worked to remediate the property valued at $25 per hour.[5] Shrader alleged the Cabinet, KDF, and DOW failed to enforce BMPs by not citing the loggers and holding them accountable, which required him to fix areas of his property that did not comply with BMPs.

A two-day administrative hearing was held at which Shrader offered numerous exhibits but was the only witness to testify. Shrader was considered an expert witness due to his training and experience as a Master Conservationist, Master Logger, and Master Woodland Steward.

Following the hearing, the hearing officer issued recommended findings of fact, conclusions of law, and an order. The hearing officer recommended that the Commission dismiss Shrader's claim because the Cabinet did not breach its duty to investigate or fail to enforce regulations in a routine, ministerial manner. The hearing officer concluded that, in light of all the evidence presented, Shrader's disagreement with the Cabinet's findings, and the Cabinet's decision not to issue citations Shrader felt it should have, did not make it legally liable to Shrader for damages.

---

[5] Shrader settled with the loggers for $20,000 in a separate action – $19,000 was designated as Shrader's recovery for breach of contract but only $1,000 for BMP violations.

The Commission entered a final order accepting and adopting the hearing officer's recommended order. Shrader appealed to the Breckinridge Circuit Court, which entered an order reversing the Commission's final order and remanding the case for further proceedings. This appeal followed.

## STANDARD OF REVIEW

It is well-settled that:

> The basic scope of judicial review of an administrative decision is limited to a determination of whether the agency's action was arbitrary. *Bobinchuck v. Levitch*, [380 S.W.2d 233 (Ky. 1964)]. If an administrative agency's findings of fact are supported by substantial evidence of probative value, they must be accepted as binding and it must then be determined whether or not the agency has applied the correct rule of law to the facts so found. *Kentucky Unemployment Ins. Comm'n v.* [*Landmark Cmty. Newspapers of Kentucky, Inc.*, 91 S.W.3d 575 (Ky. 2002)]. The Court of Appeals is authorized to review issues of law involving an administrative agency decision on a de novo basis. *Aubrey v. Office of the* [*Att'y Gen.*, 994 S.W.2d 516 (Ky. App. 1998)]. In particular, an interpretation of a statute is a question of law and a reviewing court is not bound by the agency's interpretation of that statute. *Halls Hardwood Floor Co. v. Stapleton*, [16 S.W.3d 327 (Ky. App. 2000)].

*Liquor Outlet, LLC v. Alcoholic Beverage Control Bd.*, 141 S.W.3d 378, 381 (Ky. App. 2004).

## ANALYSIS

On appeal, the Cabinet argues the circuit court erred by impermissibly shifting the burden of proof from Shrader to the Cabinet and improperly substituting its own judgment for the Commission's when its findings were supported by the record and not clearly erroneous. We will address each of these arguments, in turn.

KRS 13B.090(7) provides:

> In all administrative hearings . . . the party proposing the agency take action . . . has the burden to show the propriety of the agency action or entitlement to the benefit sought. . . . The party with the burden of proof on any issue has the burden of going forward and the ultimate burden of persuasion as to that issue. The ultimate burden of persuasion in all administrative hearings is met by a preponderance of evidence in the record, except when a higher standard of proof is required by law. Failure to meet the burden of proof is grounds for a recommended order from the hearing officer.

Here, Shrader requested agency action; therefore, he bore the burden of proof pursuant to statute.

In *Blankenship v. Lloyd Blankenship Coal Co.*, 463 S.W.2d 62 (Ky. 1970), Kentucky's then highest court[6] held:

> It is not necessary for a party who does not have the burden of proof to produce 'substantial evidence' in

---

[6] The Supreme Court of Kentucky was not established until 1976; the Court of Appeals of Kentucky was the Commonwealth's highest court prior to that time.

order for a decision in his favor to stand. If the evidence against him is strong enough to require an unfavorable decision against him unless rebutted, he need only inject enough doubt that it cannot be held unreasonable for the fact-finding body to remain unconvinced by his adversary's evidence. Cf. *Hunter v. Turner Elkhorn Mining Co.*, [455 S.W.2d 571, 572 (Ky. 1970)]; *Porter v. Goad*, [404 S.W.2d 795 (Ky. 1966)]; *D. H. Overmyer Company* [*v. Hirsch Bros. & Co., Inc.*, 459 S.W.2d 598 (Ky. 1970)]. Stated another way, if the whole evidence is such that the fact-finder cannot be compelled as a matter of law to find one way or the other, and in fact is unable to find one way or the other, the party with the burden of proof loses.

*Id.* at 64.

Herein, clearly the Cabinet did not bear the burden of proof and, thus, was not required to produce substantial evidence in support of its position. The circuit court found the Commission's final order "was not supported by substantial evidence," stating:

There was documentary proof submitted during the hearing that evidenced violation of BMPs, but no citation to the appropriate agencies for remedy. The Cabinet moved for a directed verdict at the hearing, which was not granted, and then provided no testimony or refutation of Shrader's expert testimony regarding the BMP violations.

As the Cabinet suggests, this finding effectively and erroneously shifted the burden of proof to the Cabinet. Obviously, it was unnecessary for the Cabinet to present any evidence. We understand the appearance of illogicality for the Commission to deny a motion for directed verdict only to subsequently find in the Cabinet's favor

-7-

without any additional evidence. However, a denial of a directed verdict does not equate with sufficiency of evidence in that the burden required is different in each case. For a directed verdict the court (or Commission) merely determines whether it would be unreasonable to make a finding in a petitioner's favor – a low bar indeed. However, in order to prevail on the merits, a petitioner must offer a preponderance of evidence. The Cabinet asserts the circuit court improperly concluded that a decision in Shrader's favor was required by the evidence and substituted its judgment for the Commission's in the reversal of its final order. We agree.

It is well-established that, "[i]n a case in which the [Commission] finds against a claimant having the burden of persuasion, as in this instance, the issue on appeal to the court is whether the evidence for the claimant was so strong that the [Commission] could not reasonably have found against him." *Commonwealth, Dep't of Highways v. Hoskins*, 495 S.W.2d 177, 178 (Ky. 1973). After careful review, and for the reasons discussed herein, we cannot say that Shrader's evidence was so strong that it was unreasonable for the Commission to find against him.

Since this is a negligence claim, the onus was on Shrader to prove: (1) the Cabinet owed him a duty of care, (2) the Cabinet breached the standard by which its duty is measured, (3) consequent injury, and (4) damages. *See Pathways,*

*Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). The hearing officer and the Commission found there was no breach of duty, which is a question of fact, rather than one of law. *Id.* at 89. Thus, the decision was entitled to a deferential review.

In its examination of whether the Cabinet breached its duty owed to Shrader, the hearing officer cited *Grogan v. Commonwealth*, 577 S.W.2d 4 (Ky. 1979), which held "a government ought to be free to enact laws for the public protection without thereby exposing its supporting taxpayers . . . to liability for failures of omission in its attempt to enforce them. It is better to have such laws, even haphazardly enforced, than not to have them at all." *Id*. at 6. Like the plaintiffs in *Grogan*, Shrader claims the Cabinet "did not enforce a law or laws designed for the safety of the public and that . . . taxpayers must therefore bear a loss occasioned by someone else's failure to comply with the law."[7] *Id*. at 5. Although the *Grogan* court found "no basis for tort liability" in that case, there are cases in which governmental agencies are liable for breaches of duty. *Id*. at 6.

The hearing officer contrasted the case herein to another case in which a breach was found: *Collins v. Commonwealth of Kentucky Natural Resources and Environmental Protection Cabinet*, 10 S.W.3d 122 (Ky. 1999). In *Collins*, the Board found the Cabinet negligent where "Cabinet employees had a duty to inspect

---

[7] We note again that Shrader has already held the loggers responsible for the breach of their contract and BMP violations.

-9-

[a] mine site properly to ensure that the culvert was free-flowing and that this duty had been breached . . . . In its ruling, the Board stated that even 'minimal regulations' charged the Cabinet with the duty of performing a more thorough inspection than merely having inspectors drive over the culvert." *Id*. at 124. Here, the hearing officer found that the Cabinet investigated Shrader's property eight times during the timber harvest as well as multiple times afterward in response to Shrader's complaints and "thoroughly considered and investigated" his disagreements with their findings; however, ultimately neither agents of the KDF nor DOW found it appropriate to cite any violations after their investigations. Unlike *Collins*, here the Cabinet plainly discharged its duty to investigate. In view of the whole record, we cannot say the Cabinet was negligent in its decision to not issue citations nor legally liable to Shrader for its decision.[8] The circuit court

---

[8] Shrader refers us to the following documents, in addition to those previously discussed:

- Letter dated August 19, 2015, by DOW Project Manager Chloe Brantley identifying four "incidental" log jams which "should" be removed;
- Letter dated August 4, 2016, by University of Kentucky Geologist James C. Currens responding to Shrader and identifying photographed features as natural sinkholes;
- Statement signed after 2017 by Cecil E. Burch – identified as a journeyman, master plumber, and excavator – that he observed BMP violations after loggers left the property;
- Letter dated October 28, 2016, by Louisville Metropolitan Sewer District, Certified Erosion Control Specialist Matthew Blankenship, opining "[m]ost any layperson of average intelligence that could read the timber sale contract language and [BMPs] could clearly identify those areas that failed to meet the timber sale contract requirements, after the logging";
- Letter dated September 6, 2015 – presumably meant to be 2016 – by Geologist Ted Jessup opining BMP #s 2, 3, and 4 had not been met on Shrader's property;

-10-

improperly usurped the Commission's fact-finding role in determining otherwise and reversing its final order. *See 500 Assocs., Inc. v. Nat. Res. & Env't Prot. Cabinet*, 204 S.W.3d 121, 131-32 (Ky. App. 2006).

## CONCLUSION

Therefore, and for the foregoing reasons, the order entered by the Breckinridge Circuit Court is REVERSED thereby reinstating the Commission's final order.

ALL CONCUR.

---

- Letter dated September 9, 2016, by DOW Supervisor Charles Roth clarifying that the DOW's prior recommendation "does not preclude the use of other means to stabilize the area if these prove to be more efficient or desirable by the landowner";
- Report dated May 25, 2017, by Kentucky Department for Natural Resources, Environmental Scientist Nicholas R. Lawhon, regarding his December 12, 2016, inspection of Shrader's property which discussed nine potential karst features;
- Letter dated May 25, 2017, by KDF Director James Wright informing Shrader that the "Cabinet has thoroughly considered and investigated your allegations and evaluated your request. Based upon this investigation, we have determined that it is not appropriate to revise the Final Report";
- Forest Management Plan dated June 10, 2017, by Consulting Forester Thomas L. Pohl;
- American Tree Farm System Tree Farm Inspection Record with field inspection conducted November 30, 2017, approved by the State on December 21, 2017, noting Shrader meets or exceeds practices prescribed by the KDF's BMPs;
- Photographs; and
- Multiple emails and letters by Shrader to various recipients regarding his opinions.

This documentation does not comprise such convincing evidence that it was unreasonable for the Commission to deny Shrader's requested relief.

BRIEFS FOR APPELLANT:

Lance C. Huffman
Frankfort, Kentucky

BRIEF FOR APPELLEE ERIC
SHRADER:

Parker M. Wornall
Gregory A. Healey
Louisville, Kentucky